## C. C. HAILE ET AL. v. JENNIE JOHNSON ET AL.

Decided December 3, 1910.

**1.—Trespass to Try Title—Parties—Cross Action—Change of Boundaries.**

In trespass to try title, the issue being one of boundary, all persons in possession of and claiming land which would be within the tract claimed by plaintiff are proper parties to the suit, even though they claimed under different patents; and one defendant may pray for judgment over against a co-defendant if a change in the boundaries proves such co-defendant to be in possession of his land. But it would not be permissible, upon the prayer of one of the original defendants, to make another party, who was not in possession of any part of the land claimed by plaintiff, a defendant simply because a change in the boundaries might necessitate a suit by the original defendant against such third party.

**2.—Trial—Special Issues.**

The true function of special issues is to elicit the material facts established by the evidence, and not the evidence by which they are established; and hence they should be framed with a view to that purpose. Rule illustrated.

**3.—Same—Practice.**

Where the only material issue is one of boundary, and a determination of the question involved a construction of an entire block of surveys, the determination of conflicting calls, the relative importance of calls as read in the light of surrounding circumstances, which construction most harmonized with the greatest number of material calls and with the interest of the locator, etc., the better practice would be to submit the case by a general charge rather than by special issues.

ON REHEARING.

**4.—Appeal—Waiver of Objection to Testimony.**

A failure to present and urge by an appropriate proposition under an assignment of error an objection which was urged on the trial to the admission of testimony, will be construed on appeal as a waiver of that particular objection; and this, though the said objection was preserved in a bill of exception and comprehended in the general terms of the assignment of error. Conner, Chief Justice, dissenting.

**5.—Estoppel—Introduction of Improper Evidence—Practice.**

When a party introduces improper testimony over the objection of his opponent he will be estopped to complain that the court permitted his opponent to introduce testimony bearing on the same fact and subject to the same objection. Conner, Chief Justice, dissenting.

Appeal from the District Court of Baylor County. Tried below before Hon. Jo A. P. Dickson.

*P. C. Maynard* and *Coombes & Coombes,* for appellants.—The court erred in overruling defendant Haile's first exception to defendant McCarty's cross action on the ground of misjoinder. Johnson v. Davis, 7 Texas, 173; Birmingham v. Griffin, 42 Texas, 147; Punchard v. Delk, 55 Texas, 304; May v. Slade, 24 Texas, 205; Oneal v. Lockhart, 2 Texas U. C., 597; Stewart v. Gordon, 65 Texas, 344; Frey v. Ry. Co., 86 Texas, 465; Coutlett v. U. S. Mtg. Co., 60 S. W., 817; Callahan v. Houston, 14 S. W., 1028.

Where a suit to determine boundary is instituted by one party against several defendants, one of said defendants can not disclaim as to plaintiff's survey and implead one not a party to the original suit for the purpose of determining the boundary between him and such other party, upon the mere ground that, if plaintiff's contention should prevail, said defendant's land would be shifted in conflict with that of the impleaded party, as such would be a misjoinder of causes of action and would multiply and cloud the issues to the prejudice of such party's rights. Same authorities.

It is error for the court to permit a witness to invade the province of the jury and determine by his opinion as an expert surveyor, mixed questions of law and fact which are for the jury to decide under appropriate instructions from the court. Randall v. Gill, 77 Texas, 354; Reast v. Donald, 84 Texas, 651; Bugbee v. Brents, 31 S. W., 695.

The court erred in overruling defendants', Haile and Whitaker's, motion and request in writing to submit the cause to the jury on a general charge. Home Circle Society v. Shelton, 85 S. W., 322; Galveston Ry. Co. v. Jackson, 93 Texas, 266; Sayles' Sup., art. 1316; Sayles' Rev. Stats., art. 1317; Griffin v. Heard, 78 Texas, 616; Houston E. & W. T. Ry. Co. v. Hartnett, 48 S. W., 775; Knight v. S. Pac. Ry., 41 Texas, 406; Cole v. Crawford, 69 Texas, 127.

*Stephens & Miller* and *Cowan, Burney & Goree,* for appellees.— That the appellants are estopped to claim a reversal of the judgment because of an error in the admission of the testimony of the witness Williams, because of their conduct in previously causing the court to admit similar testimony of their own witness Morgan over the objection of the appellees, see International & G. N. Ry. v. True, 57 S. W., 977, in which writ was refused. See also, City of Huntington v. Lusch, 70 N. E., 402.

That the conduct of appellants in first drawing out the same matter in the cross-examination of witness Williams, would prevent them from having a reversal of the judgment for testimony given on re-examination by appellees, see Houston & T. C. Ry. Co. v. Harris, 120 S. W., 500; Missouri, K. & T. Ry. Co. v. Morgan, 108 S. W., 724; International & G. N. Ry. Co. v. Ford, 118 S. W., 1137.

CONNER, CHIEF JUSTICE.—Mrs. Jennie Johnson, joined by her husband, Ed. Johnson, instituted this suit against C. C. Haile, W. G. McCarty, and others unnecessary to name, to recover parts of section 3, A. C. H. & B. surveys in Dickens County, of which she alleged she had been dispossessed by the defendants.

It is undisputed that Mrs. Johnson is the owner of said section 3, and that the defendant McCarty is the owner of the west one-half of section 4 of the same surveys, which adjoins survey 3 on the east. C. C. Haile was in possession and claiming land on the north of the sections named. The real controversy was over the boundaries of sections 3 and 4, the plaintiff's contention being that the true location of section 3 was north and east of where defendants insisted they were.

Defendants severally pleaded not guilty, and the defendant McCarty in addition thereto pleaded that if the plaintiffs' contention should prevail, his co-defendant C. C. Haile and one, B. F. Whitaker, not originally sued, would be in possession claiming to own parts of his west one-half of section 4, and he prayed that Whitaker be cited, and that in event of plaintiffs' recovery he have judgment against Haile and Whitaker for such parts of his half section as it should be found they possessed. Whitaker was made a party and both he and Haile excepted to McCarty's cross-action for misjoinder, and pleaded not guilty as to all parties. The case was submitted to a jury upon special issues, and the verdict and judgment was favorable to the contention of Mrs. Johnson and the counter claim of McCarty. The defendants C. C. Haile and B. F. Whitaker appeal.

The case has been given careful consideration and we find ourselves unable to approve all of the many proceedings assigned as error. Surveys 3 and 4 in controversy are about midway in the northern tier of surveys of a block of land, irregular in form but approximately ten miles square, which was located and surveyed in the early part of 1876 by Jasper Hays. The record discloses no marked lines or corners among the northern tiers of surveys, including those in controversy, by which they can be located, their locality and situation only being ascertainable by course and distance as called for in the field notes from certain objects called for along the south line of the block, and which it is claimed were found and identified. As originally returned to the district surveyor, the field notes of Hays called to begin for his initial point two hundred varas north and about thirty-three hundred varas west from the southwest corner of section 207 in a block of surveys extending north and south that had been previously surveyed by Armstrong. This corner of section 207 is identified by a marked post oak, which throughout the trial was referred to as the post oak corner, and about which there is no dispute. Hays' initial point in said original field notes was also described as being the southwest corner of section 211 in the western line of the Armstrong block, from which two cottonwood trees were called to bear "S —— vrs." From the point so fixed, viz., the southwest corner of survey 211, the surveys were consecutively extended west some eight miles to "Abbies Peak," which was called for

in the field notes of a number of surveys in that vicinity, the most prominent call being for the peak at 300 varas North 48 East from the N. W. corner of the I. & G. N. survey No. 1, certificate 126. At the third mile east of Abbies Peak a hackberry was called for. Hackberries were also called for in the bed of a branch at the N. E. corner of survey 3, certificate 334, of the Hays surveys south of said section 211 of the Armstrong work. The evidence, however, relating to the identity of the objects called for was conflicting, as we shall hereinafter have occasion to more particularly point out.

In answer to the special issues submitted, the jury found: 1st. That Jasper Hays went upon the ground and located the block in question and that the official surveyor of the district adopted his work. 2nd. That the Abbies Peak called for in the field notes was the peak situated in "Sunflower Valley" (as insisted by appellees) instead of McKenzie's Peak situated a few miles west. 3rd. That it was Hays' intention to appropriate the vacant land in Sunflower Valley and vicinity, including the land in controversy, and to locate the same on the ground by calls for Abbies Peak and other objects. 4th. That Jasper Hays in making the location was ignorant of the true boundaries of the Armstrong surveys called for in the Hays field notes. 5th. That the call for Abbies Peak at the N. W. corner of I. & G. N. survey 1, certificate 126, should be reversed to read "Abbies Peak, south 48 degrees west, 300 varas," instead of north 49 degrees east, 300 varas, as called for in the field notes; that the calls for the Peak at the S. E. and S. W. corners of the survey adjoining I. & G. N. survey 1 on the east, were correct, and that the surveys in controversy are located on the ground according to iron pipes placed by surveyor George M. Williams. 6th. That the boundaries of 3 and 4, if fixed by calls for course and distance from the post oak corner, would be north 412 and west 207 varas of the lines as fixed by the iron pipes placed by Williams.

Disregarding assignments of error that we deem immaterial or plainly answered by the record, we first notice the contention of appellants that the court by his ruling on their exceptions to McCarty's cross-action erroneously held that there was no misjoinder of parties. As to appellant C. C. Haile, we find no reason for disturbing the court's action. He was an original party controverting, together with McCarty, the very issue upon which the suit of the plaintiff was predicated, and hence the cross plea of McCarty enabling the court to declare all of the legal consequences of a determination of the issue, seems proper. See Skipwith v. Hurt, 94 Texas, 322.

Not so, however, as to appellant B. F. Whitaker. It was not asserted that he in any event possessed or claimed any land for which the plaintiffs sued. He had no direct interest in the issue in the suit or claimed any of the land in controversy therein. McCarty could no more interplead Whitaker upon his alternative plea and thus place upon him the real burden of the defense, than could Whitaker in turn shift his burden by interpleading owners of land adjoining him whose lines might indirectly be affected by the location of the block in accord with the contention

of the plaintiffs.   It is evident that such a practice would be productive
of delays, difficulties in the determination of issues in which some of
the parties to the suit are not interested, and in the adjustment of
costs, etc.   We are of opinion, therefore, that the court should have
sustained Whitaker's exception to his joinder.

The seventh assignment of error is based upon the following bill of
exception, omitting formal parts, viz.:

"Be it remembered that on the trial of the above entitled and num-
bered cause, the following proceedings were had, towit:   That after
G. M. Williams, a witness for plaintiffs, had testified in behalf of said
plaintiffs that he, the said witness, had been continuously surveying for
thirty-eight years, that he had been county surveyor of Tarrant County,
Texas; that he had been State surveyor since 1887, and had had a great
deal of experience in surveying lands in West Texas; that he had ex-
amined the field notes of a block of surveys located by Jasper Hays in
1876; and that he, said witness, under instructions from the Commis-
sioner of the General Land Office, had reset the iron pipes formerly
placed by R. M. Kenney, State surveyor, to mark the corners, lines and
boundaries of said block of surveys, by moving said pipes two hundred
and seven varas east and four hundred and twelve varas south; that
he examined Hays' field book.   The plaintiffs, Matador Land & Cattle
Co. by their counsel, propounded to the said witness the following
question, towit:

" 'Q.   Mr. Williams, with your experience as a surveyor, and your
knowledge of this block of surveys, and what you have found on the
ground in making your resurvey of this block, the calls in the field notes
and the creek calls in Hays' field book, and the class of lands covered
by said block of surveys, now considering all these things, is it not your
opinion that the said pipes as set by you to mark the said corners,
lines and boundaries of said block of surveys, are as near the original
work as they can now be placed?'

"To which question, and the answer sought thereby, the said defend-
ants then and there in open court objected on the ground that said ques-
tion called for the opinion and conclusion of the witness, invaded the
province of the jury, and would prejudice the rights of said defend-
ants before the jury; for each and all of which reasons the said question
and the answer thereto were inadmissible before the jury; and which
said objection was by the court overruled, to which action and ruling
of the court defendants then and there in open court excepted, and
the said witness, G. M. Williams, was by the court permitted to testify,
in answer to said question, as follows:

" 'If Hayes started 412 or 414 varas south of his trial line, I think
the line that we have run out would fit the natural objects nearer than
you could fit any other way, that is the line run by Kenney and corrected
by me.   After having examined the field notes, and after having been
on the ground, and after having looked at Hayes' field book, my opinion
is that the line run by Kenney and corrected by me is the correct line.
I think, taking into consideration all of these things, the hackberry

trees, the position of the creek, variation of Avies Creek, I believe the work is as near the original as you will· ever get. I don't say that you have the original work retraced, but I believe the work run by Kenney and corrected by me fits the original work approximately. If you were to locate this I. & G. N. survey as Mr. Morgan locates it, and leave this call for the Avies Peak, it would throw this block of surveys clear out of the Valley. If a man were to go out there locating the better land for himself, it is my opinion that he would locate it in this valley and take the good land in preference to going out on the rough land locating it.' To which ruling and action of the court the said defendants then and there excepted in open court.

"Thereupon, counsel for said defendants propounded the following questions:

" 'Q. Mr. Williams, in coming to this conclusion about which you have just testified, is it not a fact that you have disregarded Hayes' testimony wherein he says that after running the trial line he turned south 914 varas to begin putting in his locations of these surveys?'

"To which question the witness answered 'yes, sir.'

"Whereupon the plaintiffs, by their counsel, propounded to the said witness, G.· M. Williams, the following question:

" 'Q. In forming your conclusions as to where this land should be located, you have taken into consideration everything tending to throw light on the matter, and have taken the corner, or the stone mound found 104 varas north of a hackberry tree on Beef Hollow?'

"To which question the said defendants, by their said counsel, then and there in open court objected, on the ground that said question called for the opinion and conclusion of the witness, invaded the province of the jury, and would prejudice the rights of the said defendants before the jury; and, further, that the question was leading; for each and all of which reasons the said question and answer thereto were inadmissible before the jury; and which said objection was by the court overruled, to which actions and rulings of the court the defendants then and there in open court excepted; whereupon, in answer to said questions, the witness replied: 'Yes, I have considered all these things in coming to such conclusion.' "

That this constitutes a very pronounced and conspicuous violation of the well established rules that leading interrogatories shall not be propounded on direct examination, and that a witness should not be permitted to give his conclusions upon mixed questions of law and fact which are for the jury's determination under appropriate instructions of the court, seems quite clear. Indeed, appellees do not defend the rulings on the ground that they are correct, but insist that appellants should not be heard to complain, for the reason shown by the court's explanation to the bill, that appellants had previously elicited similar testimony but of contrary effect from their surveyor, J. M. Morgan. The statement of facts shows that Morgan testified on ·examination in chief: "From my experience as a surveyor and from the evidence on the ground, my base lines nearly follows the line that purports to be

the original survey as nearly as can be ascertained at this time. That, in my opinion, the 'lines and corners of the Hayes work should be located from the post oak corner." And the explanation of the bill shows that this testimony was permitted over strenuous objection by appellees. That part of Morgan's testimony which embodies his opinion should of course have been excluded upon proper objection, and in a proper case we might feel no hesitation in giving appellants' action in insisting on its introduction the effect now urged; but it does not appear that Morgan's opinion was elicited by leading questions, and, under the circumstances of this case, it ought not, we think, to be held to justify or excuse the rulings of which complaint is now made. In order to deduce the conclusion expressed by Williams it was necessary not only to disregard Jasper Hays' testimony, as to the distance he began south of Abbies Peak, as stated in the bill of exception, but also to disregard the most prominent calls for the Peak in the field notes, as well as evidence tending to show the existence of the cottonwoods called for at the S. W. corner of survey 211, and that the hackberries, upon which Williams says he based his survey, were not marked until long after the Hays survey and not located as called for. Such conclusion also necessitated a disregard of a decided conflict between the Hays and Armstrong blocks contrary to the expressed intention of the original surveyor. In view of all of which it was certainly highly prejudicial to sum up the entire case in a question conspicuously leading, thereby obtaining substantially an affirmative answer, to which was added the weight of Williams' long experience and official honors. The similar error relating to Morgan's testimony but emphasizes, perhaps, the possibility that the jury were misled by considerations that had no proper place in their deliberations. At all events, we are unwilling to sustain the court's ruling and thus, perhaps, more or less disturb the lines of many surveys and affect numerous owners.

In view of another trial we will also briefly refer to another branch of the case that has added to our dissatisfaction with the proceedings below. Appellants were denied special issues requested which sought findings such as whether Hays intended to locate all the vacant land between the Armstrong surveys on the east and surveys on the west; whether the cottonwood trees mentioned in some of the testimony were the cottonwood trees called for at the southwest corner of survey 211 of the Armstrong work; and whether the hackberry trees given controlling effect by Williams were those called for in the field notes. Findings upon such issues may be, as appellees insist, merely to establish evidence proper for consideration, together with all other evidence, in the solution of the real issue. It, therefore, perhaps should not be said that the court erred in refusing to submit the issues, for the true function of a special issue is to elicit the material facts established by the evidence and not the evidence by which they are established. But if the facts so sought by appellants were but evidentiary, they were no more so than at least some of those upon which the court predicated its judgment. For instance, as hereinbefore shown, the jury in answer

to special issues submitted, found that Hays was ignorant of the lines of the Armstrong work; that the Abbies Peak called for in the field notes of Hays was a particular one; that Hays intended to locate all the vacant land in Sunflower Valley, etc. If the case is to be submitted upon special issues at all, as is generally within the sound discretion of the court, the special issues should be so framed as to establish every controverted fact material to the general conclusion.

We are very much inclined, however, to agree with appellants that the court should have granted their written request to submit the cause on a general charge. The real issue and the only material issue presented by the pleadings and evidence is to be found in the answer to the question: Where on the ground is the true location of the east and north boundary lines of section 3 claimed by the plaintiffs in the suit? A determination of this question involves a construction of an entire block of surveys; the determination of conflicting calls; the relative importance of calls as read in the light of surrounding circumstances; of which construction most harmonizes with the greatest number of material calls and with the intent of the locator, etc. Such a case in our judgment should ordinarily be submitted by a general charge giving appropriate instructions for the guidance of the jury in arriving at their verdict.

Before concluding we should also suggest that, while its materiality has not been made to appear very clearly, we incline to the view that at least the Land Office map of 1873 should have been admitted. The map of 1873 appears to be an archive of the Land Office, and, if relevant, as it apparently is, was not subject to the objections that it was "*res inter alios acta,* not proven to be correct, nor how made, or from what data." Revised Statutes, articles 62 and 2308.

There are other questions presented by assignments of error, but they are such as are not likely to occur on another trial, or have become immaterial in view of what we have said.

We conclude, therefore, that for the reasons stated the judgment should be reversed and the cause remanded.

### ON MOTION FOR REHEARING.

The majority have concluded that we erred in declining to apply the principle of estoppel in our ruling upon appellants' seventh assignment of error. This assignment and the only proposition submitted thereunder is as follows:

"The court erred in permitting the witness Geo. M. Williams to testify that the original location of the lands in controversy was at the place fixed by him by the iron pipes placed by him, and in permitting said witness to give in evidence before the jury his opinion as an expert surveyor to the effect that the way he had constructed the Hays work on the ground, as shown by his plat, was the correct way to construct same, and that there was no other way same could be constructed in accordance with the field notes than the way he had constructed same;

all of which was over objection of defendants as shown by their bill of exception No. 4 on file in this cause."

Proposition.—"It is error for the court to permit a witness to invade the province of the jury and determine by his opinion as an expert surveyor, mixed questions of law and fact, which are for the jury to decide under appropriate instructions from the court."

The majority think that inasmuch as the objection to the testimony of Williams, found in the bill of exception set out in our original opinion, that the interrogatories were leading, was not brought forward in the brief in the form of an appropriate proposition, that such objection should be considered as waived, and that having been so waived, appellants, on the authority of International & G. N. Ry. Co. v. True, 57 S. W., 977, and Huntington v. Lusch, 70 N. E., 402, can not be heard to complain of the testimony of Williams because of the fact, shown in the court's explanation of the bill, that appellants over appellees' objection introduced the opinion of the surveyor Morgan of the same character, though of different effect, as that of Williams. With the general conclusion the writer is unable to agree. It is obvious that both the assignment and proposition are well taken. No one has undertaken to justify the ruling. The only question is whether appellants are estopped from urging the undoubted error. In other words, appellees appeal to this court to apply for their benefit an equitable doctrine. In determining whether this shall be done, the writer thinks, regardless of the purely technical rule of waiver invoked, that all of the circumstances of the case may and should be considered, including the fact that the objectionable testimony had been elicited by leading interrogatories. That the question to Williams under consideration was leading is apparent. That this objection is specifically urged in the bill of exceptions and comprehended in the general terms of the assignment, can hardly be denied, and it is evident to the mind of the writer that there was no intentional waiver of the objection, but that the failure to carry the objection forward by an additional proposition was the result of hurry and oversight in the preparation and presentation of an intricate and voluminous record. So viewing the subject, and considering the testimony as a whole and other objectionable features adverted to in our original opinion, the writer feels that confidence is not to be reposed in a verdict and judgment affected by the errors indicated, and therefore that in the exercise of a sound discretion the court should not extend to appellees a grace which, though possibly justified, is certainly not required. He accordingly adheres to the views expressed in our original opinion.

The conclusion of the majority, however, must prevail, and inasmuch as it is their further conclusion that no reversible error is otherwise presented, the motion for rehearing will be granted and the judgment affirmed as to all parties except appellant B. F. Whitaker, as to whom we all agree the suit should be dismissed at the cost of appellee

W. G. McCarty because of his improper joinder, as originally determined.

*Affirmed.*

Conner, Chief Justice, dissenting.