McCORMACK v. CRAWFORD.    (No. 766.)*

(Court of Civil Appeals of Texas.    Amarillo. Nov. 13, 1915.    On Motion for Rehearing, Jan. 5, 1916.)

1. BOUNDARIES ⊙⟶40 — SURVEY — NOTES — QUESTION FOR JURY.

In trespass to try title where no conflict appeared from an inspection of the field notes from the various sections composing a block, but where conflict arose between the calls in the field notes of a survey of that block and upon the testimony of a surveyor as to the manner in which the block was constructed, the question as to the proper location of the block on the ground and the contention of the surveyor with reference thereto, was for the jury.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 196–204; Dec. Dig. ⊙⟶40.]

2. APPEAL AND ERROR ⊙⟶882 — PARTY ENTITLED TO ALLEGE ERROR—ESTOPPEL.

Defendant in trespass to try title having put in the evidence of the surveyor as to how a block was constructed, could not complain of such evidence on appeal to the Court of Civil Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent.Dig. §§ 3591–3610; Dec.Dig. ⊙⟶882.]

3. BOUNDARIES ⊙⟶3 — TEXAS — SURVEYOR'S NOTES.

In trespass to try title involving the lines of block C–3 as they appeared in the field notes of the various sections of block J–K, which blocks constituted a system of surveys, based on the line outlined by the surveyor, who had run only one line upon which all these blocks were constructed by him, as shown by his field notes in the land office several months apart, the fact that he first made out and filed the field notes of C–3, did not prevent the further fact that the lines of that block were called for in the field notes of J–K, having its due weight, and the rule that the lines of a prior survey cannot be controlled by the call of the junior survey, did not apply.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. ⊙⟶3.]

4. BOUNDARIES ⊙⟶1—SURVEYS—LINES.

A marked line or corner in a block or system of surveys belongs as much to one block as to another.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 1; Dec. Dig. ⊙⟶1.]

5. EVIDENCE ⊙⟶342 — TEXAS — SURVEYS — SKETCHES AND MAPS.

In trespass to try title, certified sketches and maps from the land office were competent to show, at least prima facie, the location of surveys outlined there.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1302–1314; Dec. Dig. ⊙⟶342.]

6. APPEAL AND ERROR ⊙⟶1051 — HARMLESS ERROR—ADMISSION OF EVIDENCE.

In trespass to try title error, if any, in allowing the chief draftsman of the general land office to testify with reference to what appeared from the original field notes of the various surveys was harmless, where the maps and field notes themselves were in evidence, and the facts testified to appeared from an examination thereof.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. ⊙⟶1051.]

---

⊙⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Second motion for rehearing denied February 9, 1916. Application for writ of error pending in Supreme Court.

7. BOUNDARIES ⊙⇒42 — FINDINGS — SPECIAL ISSUES.

In trespass to try title, an affirmative finding on the special issue as to whether the original surveyor locating blocks C–3, J–K and others located it on the base line run by him from a sod monument located at the northeast corner of survey No. 9 in block J–K eastward, and whether he located the southwest corner of survey No. 5 in block C–3 on said line two miles east of the monument, made the issue as to whether the officers of the state and the grantee named in the patents intended, when the patents granting surveys No. 3 and 5 were issued, that the survey should lie adjacent to and adjoining block J–K immaterial.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 208; Dec. Dig. ⊙⇒42.]

8. APPEAL AND ERROR ⊙⇒1050 — HARMLESS ERROR—ADMISSION OF EVIDENCE.

In such case error, if any, in the evidence bearing upon such immaterial issue was harmless, within the rule that if there is sufficient evidence to sustain the verdict, judgment will not be reversed because of the admission of immaterial facts, unless such admission has properly influenced the jury in its findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ⊙⇒1050.]

On Motion for Rehearing.

9. EVIDENCE ⊙⇒83—PRESUMPTION—OFFICIAL ACTS—SURVEY—MAPS AS EVIDENCE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5306, requiring every district, county, or special surveyor to plat once in every three months all surveys made in such district or county, to that date, and to send sketches thereof to the general land office, the court, on a showing that the blocks involved in trespass to try title were all office surveys constructed with reference to a base line, and not actually surveyed on the ground except as to such base line, must presume that the maps were a reproduction of the office work required to be so returned to the land office showing the acts of the surveyor in the location of such blocks.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. ⊙⇒83.]

10. BOUNDARIES ⊙⇒36—EVIDENCE—MAPS.

In trespass to try title where the maps constituting under the statute a necessary part of the grant, showed a conflict with the calls in the field notes of section 1 in block C., wherein it was sought to tie the northwest corner of that section to surveys No. 124 in block M–8 and No. 1 in block M–13, 12 and 15 miles away respectively, they should have been submitted to the jury.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 160–162, 164, 166–176; Dec. Dig. ⊙⇒36.]

11. BOUNDARIES ⊙⇒3 — TEXAS — SURVEYS — "DESCRIPTIVE CALLS"—"LOCATIVE CALLS."

In field notes of section 1 in block C., wherein it was sought to tie the northwest corner of that section to surveys No. 124 in block M–8 and No. 1 in block M–13, 12 and 15 miles away respectively, the calls for M–13 and M–8 were "descriptive calls" and not "locative calls."

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. ⊙⇒3.]

12. EVIDENCE ⊙⇒83 — PRESUMPTIONS — OFFICIAL ACTS—FIELD NOTES—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. art. 5306, requiring surveyors to plat surveys in their district or county, and to send sketches thereof with the field notes to the general land office, it would be presumed that when the state issued a patent in the case of a block for any subdivision thereof to the grantee, that the

land commissioner had not only the field notes, but the plat returned with the field notes before him.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. ⊙⇒83.]

13. EVIDENCE ⊙⇒460 — PAROL EVIDENCE — SURVEY.

A conflict between the surveyor's maps and the field notes required the court to resort to parol evidence to ascertain if possible the footsteps of the surveyor.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. ⊙⇒460.]

14. BOUNDARIES ⊙⇒1 — SURVEY — DISREGARDING CALLS.

In trespass to try title, calls given by mistake should be disregarded and effect given to calls which were certain and were found in connection with the other matters of description contained in the grant which would conform it to the evident intention of the parties.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 1; Dec. Dig. ⊙⇒1.]

15. BOUNDARIES ⊙⇒10 — SURVEYS — FIELD NOTES—EXPLANATION.

The field notes of a block constituting a prior survey might be explained by subsequently made field notes of another block constructed within three months' time permitted for returning the plats and field notes to the land office.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 90, 91; Dec. Dig. ⊙⇒10.]

16. BOUNDARIES ⊙⇒3—SURVEYS—CALLS.

While a call for the northwest corner of survey No. 1 in a block is no more dignity than the call for the southwest corner of survey No. 5, calling for a mound, by which the surveyor meant a point, yet if the point could be located on a well-marked line by course and distance, it should control the call for an unmarked corner several miles away which the surveyor never saw, and which was purely a descriptive call, in determining where the block was actually located on the ground.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. ⊙⇒3.]

Appeal from District Court, Hale County; Jno. W. Veale, Special Judge.

Trespass to try title by Ralph Crawford, continued after his death by Ralph D. Crawford and another, against Charles McCormack. Judgment for plaintiffs and defendant appeals. Affirmed.

C. D. Russell, of Plainview, and J. T. Montgomery, of Wichita Falls, for appellant. Mathes & Williams, of Plainview, and N. A. Rector, of Austin, for appellees.

HALL, J. Ralph Crawford instituted this suit against appellant, in the ordinary form of trespass to try title, to recover sections Nos. 3 and 5, in block C–3, Tyler Tap Railway Company surveys, in Hale county. The two sections of land are described by metes and bounds in the petition. Plaintiff also prayed for rents. The death of plaintiff having been suggested, Ralph D. Crawford and Julia Crawford, on September 7, 1914, intervened, alleging that they were the owners of the land and the devisees of Ralph Crawford, and adopting the allegations in plaintiff's petition. Defendant McCormack answered by disclaiming as to all the lands sued for except a cer-

tain portion thereof described in his answer by metes and bounds, and as to that part pleaded not guilty and general denial. The case was tried before a jury upon special issues. Based upon the verdict, the court rendered judgment for Ralph D. and Julia Crawford for the lands in issue and $327 rents.

The land claimed by defendant Crawford is described in his answer as follows:

"Beginning two miles east and four miles north of the sod monument referred to in plaintiff's petition as the northeast corner of survey No. 9, block J–K, and which said beginning point is the northeast corner of survey 29, block S–1, as now located; thence east 1,621 varas to a point in the west line of block C–3; thence south 7,300 varas to a point on the north line of J–K 2; thence west 1,621 varas to the southeast corner of survey No. 4, block J–K; thence north 7,300 varas to the beginning. The land thus described includes the greater part of sections 3 and 5, set out in plaintiff's petition."

On the trial it was admitted that Ralph D. and Julia Crawford own surveys 3 and 5, block C–3, wherever same may be properly located. The issue in the case was as to the proper location of block C–3. The plaintiffs contended that block C–3, when properly located, was surrounded by blocks S–1 and J–K on the west, block J–K 2 on the south, J–K 3 on the east, and by the Hobbs and Ray Surveys on the north, said last-named surveys lying between block C–3 and block M–13. The defendants' contention was that there was a vacancy 1,621 varas wide existing between block C–3 on the east, and blocks S–1 and J–K on the west; and that a vacancy also existed between the north line of J–K 2 and the south line of block C–3. According to the maps introduced in evidence, there was a sod monument which was a well-established corner, near the center of block J–K, being the northeast corner of section 9 of said block. A line protracted east from the sod monument would be the south line of block C–3, as last-named block was located, according to the contention of plaintiff.

John Summerfield testified by deposition for plaintiff in substance as follows:

"I am 59 years of age, and reside in Dallas, Tex.; was land surveyor from 1876 to 1880; ran solar instrument, doing meridian and township work for the United States government in 1874 and 1875. I am the same Summerfield who signed the field notes of the surveys in blocks C–3, J–K, J–K 2 and J–K 3 in Hale county, Tex. In 1876, I ran a line and established certain earth monuments and mounds and pits, and afterwards some of these marks were adopted as corners for surveys and field notes dated at the time of their adoption. The earth mound or monument at the northeast corner of survey 9, block J–K, was built by me on the morning of June 3, 1876, and was established as per my original field notes at the end of the eleventh mile on a line I was running due east (variation 11 degrees, 45 minutes east) from another earth monument established by me on the 2d day of June, 1876. These monuments, if no errors were made by my chainmen, would be 11 miles apart. I ran east from the sod monument at the northeast corner of survey 9, block J–K, on June 3, 1876, seven miles, and then turned north and ran 4 miles, 53 chains, 22 links, put-ting mound and two pits at the end of each mile to an intersection with Jot Gunter's party, which had left us on the morning of June 1st 1876, at an earth monument established on the evening of May 30, 1876, said monument afterwards adopted as the southwest corner of survey 347, block M–6; but there was an error of one-half mile in eastings between us, and as they had been chasing wild horses thought they had made it. I have no recollection of running other lines in blocks C–3, J–K, J–K 2, and J–K 3, other than the line above mentioned, previous to their location. I do not recollect ever being at the southeast corner of survey 124, block M–8, in Swisher county. I do not recollect that I was ever at the southwest corner of survey 1, block M–13 in Swisher county. The mounds made by me on the line run by me in 1876, where they fitted into the surveys at the time of their location, were intended to be the mounds referred to in field notes, but in retracing some of my lines, where I had put up mounds and pits in 1876, in the year following, I found them nearly destroyed by the buffaloes, so that I stopped putting them up and only established the large earth monuments which they could not obliterate. This applies to the prairies where we could not find rock to put up for corners. My recollection is that in all the field notes a mound was called for at each corner, but they will show for themselves. I put a mound and two pits, one on each side of the line, I was running, at the end of each mile run by me in 1876, except where earth monuments or rock mounds are called. I do not remember to have ever surveyed or measured the distance from either the southwest corner of survey 124, block M–8, or the southeast corner of survey No. 1, block M–13, to C–3, or to that vicinity."

The field notes of the surveys in block C–3, beginning with survey No. 1 in the northwest corner of said block, show according to the agreement of the parties in this court that the beginning corner of said block 1 is 15 miles south from the southeast corner of survey 124, in block M–8, and 12 miles south of the southwest corner of survey No. 1, in block M–13. The remaining calls of said section 1 are as follows:

"Thence south 1,900 varas a mound; thence east 1,900 varas a mound; north 1,900 varas a mound; west 1,900 varas to the beginning."

The remaining surveys in said block C–3 call to begin at a corner of the survey next preceding it in numerical order on through the block and call for nothing except that at each corner a mound is specified. The field notes of this block are dated November 5, 1877, and filed in the General Land Office January 7, 1878, and passed as correct on the map of Hale county, March 27, 1878.

Field notes of a survey, made by N. K. Smith, were introduced in evidence, showing that if block C–3 is located from the beginning call of survey No. 1, in said block, that the entire west line of the block will lie 1,621 varas east of the east line of block J–K, creating a vacancy between the two blocks, which is part of the land claimed by the defendant.

Over the objections of defendant, plaintiff introduced the field notes of surveys Nos. 1 to 11 inclusive of block J–K. The field notes of survey 1 in said block call to begin at a mound the northwest corner of survey No. 5, in block C–3, and for the northwest

corner of survey No. 4, in said block. The field notes of survey No. 3 in one of the corners calls for the sod monument heretofore mentioned; and without setting out the field notes in full it is sufficient to state that all of the surveys in block J–K, which touch block C–3 or the sod monument, called for them. The remaining surveys in said block J–K call to begin on a survey next preceding it in its numerical order. The field notes of this block are dated January 14, 1878, and were filed in the General Land Office February 11, 1878. The field notes of blocks J–K 2 and J–K 3 also call for the corners in block C–3, wherever the sections in said blocks touch the line of block C–3.

The field notes of surveys 5, 61, 62, 65, and 68 of block M–3, were introduced in evidence, none of which refer to either of the three blocks last above mentioned. The field notes of said survey 5 are dated March 30, 1878, and the field notes of the remaining sections in said block are dated January 21, 1878.

The patents of surveys 3 and 5, block C–3, dated March 28, 1878, describing the surveys exactly as in the original field notes, were introduced.

The defendant introduced in evidence the field notes of a number of surveys in block B–5, M–6 and M–8; and the field notes of survey No. 1, block M–13, showing that the last-named survey begins at a mound 2 miles south of the southeast corner of survey 124, block M–8. These field notes are dated September 29, 1877; filed November 1, 1877; and passed as correct on the map and patented January 18, 1878. The defendant then introduced the deposition of John Summerfield, in which he testified that in 1874 he worked for the United States government, running boundary lines in Colorado, Indian Territory, and Southern Kansas; that he came to Texas in 1876, and took charge of the locating party of Jot Gunter and W. B. Munson, at Sherman, and surveyed land as a deputy surveyor under W. Calloway of the Jack land district, surveying land in what is known as Randall, Deaf Smith, Castro, Swisher, and Hale counties. This witness further stated:

"I herewith give you the line run by me in the year 1876, from which all the surveys in all of blocks M–8, M–13, C–3, J–K, M–6, and M–7, were located and platted. Wherever the corners established by me in the line hereafter described touched any of surveys in any of said blocks, the same was adopted and described in the field notes. The term 'mound' in said surveys was used instead of the word 'point,' and if any corner in said field notes did not describe mounds and pits, then no mound was established on the ground. The surveys in the blocks mentioned were all supposed to contain 640 acres and call for one another. The line mentioned as run in 1876 I began at a large earth monument on the south side of the Canadian river on Lodgeskin creek, in Potter county, established by T. S. McClelland and W. B. Munson in 1875, and this earth monument was afterwards adopted as the southwest corner of survey 153, B. S. & F. block No. 9. I started my survey on the 21st day of May, 1876, from this corner."

The witness then describes in detail the line surveyed by him up to June 1, 1876, and continues:

"I ran south for 15 miles to a mound and two pits at the end of each mile; I then turned and ran south 45 east, diagonally across ten sections, putting a mound and two pits at the proper points for the corner of each section. At the end of the tenth section I established an earth monument. Then I ran east for 10 miles, establishing a mound and two pits at the end of each mile, continuing east on the eleventh mile at 38 chains, crossed a creek, which was afterwards known as Running Water; at 80 chains established a large earth monument, which was afterwards adopted as the northeast corner of survey 9, block J–K. * * * All the blocks M–6, M–8, M–13, M–15, and C–3 were all plotted in after these lines were run, and wherever they touched these base lines the corners on said lines were adopted as the corners for the surveys in said blocks. None of the surveys in blocks M–13 and C–3 were run out on the ground, and the corners established by me except where any survey may have touched the base line as above. I suppose you call them office surveys, but they were all plotted and supposed to connect properly from the base line as above described. H. C. Hedrick was not a practicing surveyor, and he signed some of the field notes as a deputy surveyor of the Jack Land District, plotted from the base lines run by me. He has been dead a number of years. Jot Gunter and T. S. McClelland are also dead."

In defining the boundaries of block C–3, the footsteps of the surveyor, Summerfield, are found along its south line, if his testimony is to be taken as true. This witness says he located and plotted block C–3 with this line as a base, although the line is not mentioned in his field notes. As heretofore stated, the beginning corner of section 1, block C–3 is "15 miles south from the southeast corner of survey 124, in block M–8, and 12 miles south of the southwest corner of survey 1, block M–13." Summerfield says he never measured the distance stated in that call, and has no recollection of ever being at the southeast corner of survey 124, block M–8, or the southwest corner of block M–13.

[1, 2] Appellant's first proposition is:

"Where a block of surveys can be and are definitely located and fixed on the ground by calls of their own field notes and there is no uncertainty or ambiguity whatever in said field notes in themselves, or when applied to the ground and where there is no conflict in the evidence as to any material fact the surveys must be located from the calls of their own field notes."

The court submitted to the jury as the first special issue the following:

"Did Summerfield, the original surveyor, who located blocks C–3, J–K and J–K 3, locate said block C–3 on the base line run by him from the sod monument located at the northeast corner of survey No. 9, in block J–K, eastward from said monument, and did he locate the southwest corner of survey No. 5 in said block C–3 on said line 2 miles east of said sod monument? Answer yes or no."

The jury answered, "Yes." Appellant requested a peremptory instruction only.

The proposition is urged under the second assignment that:

"Where a survey or block of surveys can be definitely located from the calls of their own field notes and there is no ambiguity or uncer-

tainty in the calls, the land must, as a matter of law, be located from the field notes, and it is error to authorize a jury to locate the survey or surveys from a line run but not marked or called for."

In support of these propositions appellant cites Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931; Upshure County v. Lewright, 101 S. W. 1013; Keystons Co. v. Peach River Lumber Co., 96 S. W. 64; Johnson v. Archibald, 78 Tex. 96, 14 S. W. 267, 22 Am. St. Rep. 27; Anderson v. Stamps, 19 Tex. 460; Converse v. Langshaw, 81 Tex. 275, 16 S. W. 1031; Blackwell v. Coleman County, 94 Tex. 216, 59 S. W. 530; Coleman v. Stewart, 65 S. W. 384; Matthews v. Thatcher, 33 Tex. Civ. App. 133, 76 S. W. 61. We admit that a careful perusal of these authorities tends to sustain appellant's contention; but the testimony of Summerfield was not objected to and indeed part of it was introduced by appellant. No conflict appears from an inspection of the field notes of the various sections of which block C–3 is constructed, but a serious conflict arises between the calls in the field notes of survey No. 1 of that block and the testimony of Summerfield, wherein he details the manner in which the block was constructed. Having introduced this testimony appellant is in no position now to complain in this court. The evidence having been admitted it became a question of fact as to the proper location of block C–3 upon the ground, and the intention of the surveyor with reference thereto. Cox v. Finks, 41 S. W. 95; Busk v. Manghum, 14 Tex. Civ. App. 621, 37 S. W. 459; Masterson v. Ribble, 34 Tex. Civ. App. 270, 78 S. W. 358; Taft v. Word, 124 S. W. 437; Gilbert v. Finberg, 156 S. W. 506.

[3, 4] Appellant insists that the jury could not properly consider the calls for the lines of block C–3, as they appeared in the field notes of the various sections of block J–K. The testimony of Summerfield shows that these blocks constitute a system of surveys based upon the line outlined by him. McMeans, Justice, in Shindler v. Lutcher & Moore Lumber Co., 107 S. W. 941, held that where the calls in an office survey are based on another survey actually made on the ground and are established at the time both surveys recognizing a landmark which could only be known by an actual survey, the fact that the field notes of the office survey were dated one day earlier than the field notes of the actual survey, did not affect the priority of the actual survey. The undisputed testimony is that Summerfield ran only one line, upon which all these blocks were constructed by him, as shown by his field notes filed in the land office several months apart. The fact that he made out and filed the field notes of C–3 first, does not prevent the further fact that the lines of C–3 are called for in the field notes of J–K from having its due weight; and the rule that the lines of a prior survey cannot be controlled by the calls of a junior survey should

not apply. Crosby v. Stevenson, 156 S. W. 1110. It was held by the Supreme Court of the United States, in the case of Clement v. Packer, 125 U. S. 309, 8 Sup. Ct. 907, 31 L. Ed. 728, that a marked line or corner in a block or system of surveys belongs as much to one block as another. Booker v. Hart, 77 Tex. 146, 12 S. W. 16.

[5] Appellant predicates error upon the action of the court in permitting appellee to introduce in evidence certain maps, being copies furnished by the Land Office. Certified sketches and maps from the Land Office are always competent to show at least prima facie the location of surveys outlined there, and moreover, the maps introduced were specified in the stipulation made by the attorneys, wherein it is agreed that they should be introduced. Myers v. Moody, 122 S. W. 920; Haile v. Johnson, 133 S. W. 1088.

[6] One Hunnicutt, Chief Draftsman in the General Land Office, was permitted, over the objection of appellant, to testify with reference to what appeared from the original field notes of the various surveys composing blocks C–3, J–K, J–K 2 and S–1. The maps and field notes themselves having been introduced in evidence and the facts testified to by this witness appearing from an examination of them, the error, if any, in the admission of his deposition, is harmless.

[7, 8] Complaint is also made of the admission in evidence of the testimony of the witnesses Ray, Fortenberry, and Hobbs. These witnesses testified in substance that in 1906 they had purchased a certain vacant strip of land from the state lying between C–3 and M–13; that some of them had had possession of certain portions of block C–3 for more than 10 years, having the same fenced and occupied under a claim of ownership. The second issue submitted to the jury is as follows:

"You will determine from all the evidence in this case whether or not the officers of the state of Texas, and the grantee, Ralph Crawford, named in the patents to the said grantee, intended at the time said patents granting said surveys No. 3 and 5, block C–3, were issued, that said survey should lie adjacent to and adjoining block J–K. You will answer this question yes or no."

We are inclined to the opinion that the issue submitted here is not material in the light of an affirmative finding by the jury upon the first special issue. The evidence adduced from these witnesses therefore has no material bearing upon the real controversy, and could not have influenced the answers made by the jury to either of the special issues, and certainly not to the first. Therefore the error, if any, in admitting this testimony, is harmless. The rule is that if there is sufficient evidence to sustain the verdict the judgment will not be reversed because immaterial facts are admitted, unless such admission has probably influenced the jury in its findings. Under Rule 62–A (149 S. W. x), none of the

errors complained of would justify this court in reversing the judgment.

The judgment is therefore affirmed.

### On Motion for Rehearing.

The motion for rehearing is practically a reproduction of appellant's brief in so far as the matters urged and the arguments to sustain them are presented. We have carefully reviewed the entire record and considered the cases which we cited and which it is urged in the motion should control the decision, and we are forced to adhere to our original holding.

[9] We did not discuss in the original opinion the question of the introduction of the maps and their effect at any length. Article 5306, Vernon's Sayles' Civil Statutes (Act of January 26, 1858), makes it the duty of every district, county, or special surveyor, to plat once in every 3 months all surveys made in such district or county, upon the map of his district or county, to that date; and requires him to send sketches thereof, with the field notes of same, to the General Land Office; and by its provisions subjects him to a fine of $500 in the event he should fail to do so. Five maps from the Land Office appear in the statement of facts. Some of them are not dated, others bear date in 1879, but they all appear to be maps of block C–3, and the adjoining blocks, C–4, S–1, J–K, J–K 2, J–K 3, and in some instances showing sections 66, 67 and 68 of block M–13 on the north. These, with a sixth map, prepared by Thomas P. Whitis, show without exception that block C–3 is located on the base line running east from the sod monument established by Summerfield at the northeast corner of section 9, in block J–K. The evidence showing without contradiction that these blocks are all office surveys constructed with reference to the base line which we described at length in the original opinion and that except such base line, no actual survey was made on the ground, we must presume that these maps are a reproduction of the office work required to be returned to the Land Office by the above statute, showing the acts of the surveyor in the location of said blocks.

[10] Since they constitute, under the statute, a necessary part of the grant, there is shown a conflict with the calls in the field notes of section No. 1, in block C, wherein it is sought to tie the northwest corner of that section to surveys No. 124 in block M–8 and No. 1 in block M–13, 12 and 15 miles away, respectively. Since these maps are a part of the record and properly so, we think it was the duty of the trial judge to submit them to the jury for whatever they are worth.

[11] The call for M–13 and M–8, in the field notes of section 1, block C–3, are descriptive, and not locative calls. As said in Stafford v. King, 30 Tex. 273, 94 Am. Dec. 304:

"There is another rule to be observed in estimating these natural and artificial calls. They are divided into two classes: Descriptive or directory, and special locative calls. The former, though consisting of rivers, lakes, and creeks, must yield to the special locative calls, for the reason that the latter, consisting of the particular objects upon the lines or corners of the land, are intended to indicate the precise boundary of the land, about which the locator and surveyor should be, and are presumed to be, very particular; while the former are called for without any care for exactness, and merely intended to point out or lead a person into the region or neighborhood of the tract survey, and hence not considered as entitled to much credit in locating the particular boundaries of the land when they come in contact with special locative calls, and must give way to them."

In Finberg v. Gilbert, 104 Tex. 546, 141 S. W. 85 (4), it is said:

"Nor can there any longer be any doubt as to the rules, in such cases, which are to govern courts in the location and identification of such grants. This was stated, with his usual clearness and masterful grasp, by Judge Stayton in Boon v. Hunter, 62 Tex. 592, where he uses this language: 'The rules for the determination of boundaries, when a patent has been issued on a survey actually made, have been so often stated that it is not deemed necessary to repeat them; and, if it be not shown that no survey was made, such survey will be presumed. It is, however, not believed that the same rules in regard to the lines and corners of other surveys called for in a patent can be applied, when it clearly appears that no actual survey was ever made, and in such case it becomes necessary to look to all matters of description contained in the patent, in order to determine what particular land was conveyed and intended by the state and the grantee to be conveyed by the patent. If, in such case, from a consideration of all these, in connection with the facts surrounding the parties, and the transactions to which the parties looked at the time the patent was issued, the thing granted can be with certainty identified, then the grant ought not to be held void; but such matters of description as were evidently given by mistake should be disregarded, and effect given to the calls which are certain and are found, which, in connection with other matters of description contained in the grant, will make it conform to the evident intention of the parties' "—citing a number of authorities.

[12] We must presume under the requirement of the statute above quoted, that when the state issued the patent in the case of block C–3 or any subdivision thereof, to the grantee, that the Land Commissioner had not only the field notes, but the plat returned with the field notes by the surveyor, before him, and if the jury "from a consideration of all these, in connection with the facts surrounding the parties, and the transaction to which the parties looked at the time the patent was issued" can identify the grant with certainty, the subject-matter thereof should be located accordingly.

[13, 14] The conflict between the maps and the field notes required the court to resort to parol evidence to ascertain, if possible, the footsteps of the surveyor, and if it should appear that the calls for block M–13, and block M–8 "were evidently given by mistake, they should be disregarded and effect given to the calls which are certain and are found in connection with other matters of description contained in the grant, will make it conform to the evident intention of the parties."

[15] The holding in the original opinion, to the effect that the field notes of block J–K, which call for the lines of block C–3, should have their due weight, is also criticized, for the reason that it is contended block J–K is a junior survey. While the date of the field notes sustains appellant's contention, with reference to the priority of C–3 when the real facts are known, viz., that the base line was the only survey actually made, and that all of said blocks were constructed evidently within the three months' time permitted by the statute for returning the plats and field notes to the Land Office, we are not willing to concede that J–K is a prior survey; but if we admit such to be the fact, it is said in Finberg v. Gilbert, supra (9):

"Numerous objections were made on the trial to the introduction of all the maps produced in evidence, as well as to the testimony of the surveyors. We think that, if and when the field notes of the different sections of block 3 are introduced and the location of section 71, S. P., is shown, these subsequently made maps would be properly receivable in evidence, for whatever they might be worth as throwing light on or as corroborative of the location of the land in suit as originally fixed and placed."

In Robinson v. Doss, 53 Tex. 509, in summarizing what had been previously said in the opinion, Judge Gould uses this language:

"The maps of these surveys as they have been ever since the surveys were made, locate the corner according to distance. The evidence given by those who assisted in making these surveys, and the action of one of those parties, himself a surveyor, in the calls of an adjoining survey made by him a few weeks afterwards, show that the eastern lines and corners of the Barnett were not actually surveyed and marked, and show what was understood at the time to be the relative position of the Scott southeast corner and the Barnett northeast corner. Rejecting the single call and laying off the eastern part of the survey according to course and distance, we carry out the manifest intention to make a rectangular survey, occupying with reference to the Scott, the relative position indicated on the published maps, and by the field notes of the two surveys, as recognized in all the subsequent adjoining surveys of that period. The case is one in which adherence to the general rule would be to defeat the reason and object of the rule. We think it equally clear that if the plaintiff has been misled by the calls of the patent, it has been because of his own neglect to make that examination into the surrounding circumstances which he should have made before undertaking to locate on lands recognized in the General Land Office and on the official maps as having been patented."

[16] Ordinarily, the call for the northwest corner of survey No. 1 in this block is of no more dignity than the call for the southwest corner of survey No. 5; the latter call is for a mound. While it is true that Summerfield testified that when he called for a mound it meant a point, if this point can be located upon a well-marked line, by course and distance from the sod mound it should unquestionably control a call for an unmarked corner 12 or 15 miles away, which the surveyor admits he never saw and knew nothing about, and which is purely a descriptive call.

Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317. In Lilly v. Blum, 70 Tex. 704, 6 S. W. 284, and Boon v. Hunter, 62 Tex. 582, the question of the proper rule, which should govern in locating the boundaries of surveys not actually established on the ground, is again fully discussed. These cases approve the holding in Stafford v. King, supra, but the opinions are too long to be quoted here. We think they, together with the authorities cited in the original opinion, sustain our holding in this case. The conflict created between the calls in the field notes of section No. 1 on the one hand, and the maps and calls for block C–3 in the field notes of the contiguous sections in blocks J–K, J–K 2, and J–K 3 authorized the court to admit the testimony of Summerfield, and to submit to the jury the question as to where the block was actually located on the ground. We cannot agree with appellant that it was a question of law, and the motion is overruled.