P. A. Booker v. J. P. Hart et al.

No. 6334.

1. **Course and Distance in Surveys.**—In absence of other means of identifying a survey it may be identified by measuring from known calls of other surveys the distances and courses intervening between such known calls and the survey in question.

2.  **Locality of Survey.**—Where two surveys made by the same surveyor within a few days of each other have a common line, and that line is fixed by actual calls ascertained upon the ground, it is not competent against the identity of such common line to show that it does not occupy the place as may be ascertained by measurement from a distant survey.

3.  **Same—Excess in Acreage.**—When the limits of a survey can be certainly known by its own description, or by other undisputed contiguous surveys, the excess, unless considerable, will not constitute a vacancy.

APPEAL from Archer.    Tried below before Hon. P. M. Stine.

Appellant P. A. Booker, plaintiff below, brought this suit against J. P. Hart, appellee, by mandamus to compel Hart, who was the county surveyor, to make surveys of land claimed by Booker to be vacant, upon which he had filed certificates.  Parties claiming the land where the vacancy was alleged to be were made parties defendant.

Plaintiff contends that there is a vacancy between the Jose Ostane and the John Richards on the west, and the Rachel Story, the William Henry and the Southern Pacific Railway surveys on the east.

Defendants claim there is no vacancy.   The plat below represents the surveys as defendants claim them to be, the dotted lines showing the alleged vacancy.

All these surveys were made by the same surveyor, Twitty (except the Southern Pacific Railway survey), on the dates marked on the plat.

The Jose Ostane survey was made October 7, 1854, the Rachel Story October 8, 1854, the John Richards October 9, 1854, the Wm. Henry May 9, 1855, and the Southern Pacific Railway Company survey in 1867. The Jose Ostane survey of one league, made October 7, 1854, is described as follows: "Beginning at the northeast corner No. 90, a pile of stones, from which a mesquite marked X bears north 19 east 50 varas; thence west 4445½ varas the northwest corner of No. 106 on the east line of No. 92; thence north 5841 to the southwest corner of No. 82; thence east 1900 varas to southeast corner of No. 82; thence south 370 varas to southwest corner of No. 78; thence east 2545½ varas to northwest corner of 72; thence south 5471 to the beginning."

The Rachel Story survey, made October 8, 1854, of one-half league and one-half labor, is described as follows: "Beginning at the northwest corner of survey No. 71, Newton County school land, thence south 2188 varas, a corner; thence west 4622 varas, a corner in the east line of No. 83 in the name of the Jose Ostane; thence north 3309 varas, the north corner of the same; thence east on the south line of Nos. 76 and 77 at 2566 varas, the southeast corner of 76; thence south 1126 varas, the southwest corner of No. 73 made in the name of H. Corzine; thence on the south line of the same to the beginning 2056 varas."

The John Richards survey of 640 acres, made October 9, 1854, is described as follows: "Beginning 663 varas north from the southwest corner of No. 72, a pile of stone from which a mesquite bears north 19 east 50; thence west 1362 varas, a stake from which a mesquite bears south 36 west 36 varas; thence south 2683 a stake, from which a bunch of mesquite bears south 49 west —— varas; thence east 1362 varas, a corner; thence north 2653 varas to the place of beginning; bearings marked X."

The William Henry survey, made May 9, 1855, of 1564.6 acres, described as follows: "Beginning at the southwest corner of Rachel Story survey No. 72, thence 3135, a corner of said Rachel Story survey; thence south 2820 varas, a corner; thence west 3135 varas, a pile of stone for corner; thence north 2820 varas to the beginning.'

The survey of 640 acres made for the Southern Pacific Railway Company in 1867 is described as follows: "Beginning at the southwest corner of a survey made for Wm. Henry on the east line of John Richards survey No. 90; thence south 1900 varas to a stake in prairie; thence east 1900 varas to a stake in prairie; thence north 1900 varas to a stake in the south boundary line of a survey in the name of Wm. Henry; thence west 1900 varas to the beginning."

The Henry S. Smith survey, made October 4, 1854, is a parallelogram 1900 varas north and south by 1800 varas east and west. Its southwest corner is identified by an elm, west 250 varas, marked X.

The Barnwell survey of 640 acres lies south of the Smith, having its northwest corner identified by the southwest corner of the Smith and the elm bearing made October 4, 1854.

The Corzine survey, made on October 7, 1854, begins at the northwest corner of the Barnwell, identified as before stated. This survey of 3107 acres extends by called distance 3758½ varas west of the Barnwell, and runs around the southwest corner of the Barnwell in the form of an L 408 varas on its south line.

The Rachel Story, already described, forms an L around the southwest corner of the Corzine.

Defendants claim that the northeast corner of the John Richards No. 90, which is also the southeast corner of the Ostane, is identified by a pile of rock, from which a mesquite bears north 19 degrees east 50 varas.

The evidence of plaintiff is that measuring from the northwest corner of the Barnwell to the stone mound said to be the northeast corner of the Richards No. 90, there is too much westing by 150 varas.

Defendants' evidence makes this excess of westing from the Barnwell corner only 30 varas.

Beginning at the Rine survey, several thousand varas east of the Barnwell, the westing in excess of the calls to the stone mound is 638 varas. Measuring from known corners from the west, and so establishing the west line of the Ostane, the excess of easting in the Ostane to the stone mound is 952 varas.

The stone mound or pile of stone is claimed by defendants to be the northeast corner of the Richards survey and the southeast corner of the Ostane, and the evidence tends to establish this fact. The court so found the fact, and thus located the east line of the Ostane and the Richards, which runs due north and south, called for by the Rachel Story and the Henry surveys on the west, and which also fixes the west line of the Southern Pacific Railway survey. According to this finding there was no vacancy where plaintiff located his certificates. Judgment for defendants. Plaintiff appealed. The errors assigned relate to the court's findings and the judgment. Other necessary facts are stated in the opinion.

*F. E. Dycus* and *J. Jenkins,* for appellant.—1. A rock pile standing alone and not verified by course and distance from some defined corner or other landmark is not entitled to credit and should not control a call for courses and distances. Booth v. Strippleman, 26 Texas, 442; Jones v. Andrews, 62 Texas, 657–659; Ralston v. McLeary, 9 Dana, 338; Berkley v. Bomar, 2 Bibb, 493.

2. Common repute, when general and concurrent, is admissible as evidence of boundary, but the boundary must be an ancient one. Stroud

v. Springfield, 28 Texas, 669, 670; Boardman v. Lessees of Ford, 6 Pet., 341; Greenl. on Ev., sec. 131, note.

3. In the absence of natural or artificial objects, course and distance will govern in locating a survey or surveys on the ground. Booth v. Upshur, 26 Texas, 64; Booth v. Strippleman, 26 Texas, 442; Phillips v. Ayres, 45 Texas, 613; Jones v. Burgett, 46 Texas, 292; Fordtran v. Ellis, 58 Texas, 251; Schaeffer v. Berry, 62 Texas, 705; Ayers v. Lancaster, 64 Texas, 312; Browning v. Atkinson, 37 Texas, 633.

4. It is as lawful and persuasive to reverse the calls in a grant as to adhere to the beginning corner, whenever by so doing the land embraced would most nearly harmonize in all the calls in the grant. Ayers v. Lancaster, 64 Texas, 312; Phillips v. Ayres, 45 Texas, 607; Pearson v. Baker, 4 Dana, 321; 4 Monroe, 32.

5. It does not follow as a matter of law that because one survey calls for the line of another that either or both surveys would include or be entitled to an excess lying between them. Booth v. Upshur, 26 Texas, 64, 74; Stafford v. King, 30 Texas, 271.

*L. W. Hart, Barrett & Stine,* and *Hunter & Stewart,* for appellees, cited Jones v. Burgett, 59 Texas, 621; Phillips v. Ayres, 45 Texas, 601; Schaffer v. Berry, 62 Texas, 714; Reeves v. Roberts, 62 Texas, 550; Boon v. Hunter, 62 Texas, 582; Freeman v. Mahoney, 57 Texas, 621.

COLLARD, Judge. — Appellant Booker, the plaintiff below, claims that the vacancy he is contending for is obtained by the excess of land found between the west lines of the Rachel Story, the William Henry, and the Southern Pacific Railway surveys and the east lines of the Jose Ostane and the J. Richards surveys, the vacancy being, as he says, 1590 varas wide.

Defendants claim that these surveys join, and that there is no vacancy between.

Locating the division line where defendants claim it to be, plaintiff says that the excess on the east side of the Ostane and Richards would be 952 varas wide, and on the west side of the Story, the Henry, and the Southern Pacific Railway would be 638 varas wide. To show the excess on the east side of the Ostane, plaintiff attempts to establish its west line from known corners of other surveys, and then its east line by distance. The Ostane has no marked lines, and according to plaintiff no corners found on the ground. He determines the position of its northwest corner by measuring from the northwest corner of survey No. 182, a found corner, 3430 varas east and south 788 varas, the distance called for in the field notes of No. 182 and other surveys, to the point where the southwest corner of survey No. 82 should be, which is called for in the Ostane as its northwest corner. This point is found only by measurement, as before

stated, but plaintiff testifies it is nearly in line with the northwest corner of the J. Nelson survey, whose northeast corner plaintiff locates by its call for the creek, the northwest corner of the Nelson No. 106 being called for in the Ostane as its southwest corner.

Plaintiff's testimony also fixes the northeast and northwest corners of the Nelson by course and distance from the northeast corner of survey No. 103, well identified and to the south some 5400 varas. By this means he locates the west line of the Ostane, and contends that the east line can only be located by distance 4445½ varas to the east. The lines and corners of the Rachel Story (which must govern the Henry and the Southern Pacific Railway) are not found on the ground, but plaintiff attempts to establish its east line by beginning at the southwest corner of survey No. 57, in the name of J. M. Rine, some 13,000 varas to the east, a well identified corner, and then measuring the distances given in the field notes of other surveys to obtain the connection for the east line of the Story. The called distance from the east to the west line of the Story is 4622 varas, placing its west line something over 1700 varas from the Rine survey. Thus approaching the alleged vacancy from the east and from the west from undisputed corners an excess is found to exist. If, therefore, we had nothing more before us and no other means of locating these surveys, it might be necessary to adopt the apparent mathematical demonstration of plaintiff and decide with him in favor of the vacancy. But there are other facts to be considered which, under the rules of law, will compel us to adopt a different conclusion. The Ostane survey was made October 7, 1854, the Story on the day following, and the Richards on the next day, all made by the same surveyor—Twitty. The Ostane calls to begin at the northeast corner of the Richards at a pile of stone, from which a mezquit tree marked X bears north 19 east 50 varas; thence it runs west 4445½ to the northwest corner of the Nelson survey No. 106, etc. The Story third corner calls to be in the east line of the Ostane, and runs thence north the course of the Ostane line to its northeast corner. The northeast corner of the Richards is identical with the southeast corner of the Ostane, having the same witness tree. So we see that the surveyor who made these surveys gives them a common boundary north and south. The William Henry survey, made less than a year after these by the same surveyor, calls to begin at the southwest corner of Story, and runs in such a manner as by its calls to leave no possible vacancy between it and the Ostane and the Richards on the west. The Southern Pacific Railway survey begins at the southwest corner of the Henry on the east line of the Richards, and runs thence south 1900 varas necessarily with the east line of the Richards, leaving no vacancy between the two by the calls.

In this line of proof it should be noticed that the authorized maps of the county show no vacancy. It was evidently the intention of the surveyor who made the surveys in 1854, as well as those made afterwards, to

include all the land claimed by plaintiff. It seems to us that the excess of westing in measuring from the Rine corner to the west line of the Story must be charged to other intermediate surveys—if not all of it, at least the greater part of it. The northwest corner of the Barnwell survey, made only a few days before the Story, on the 4th of October, 1854, is an identified corner; its place on the maps in evidence is only 1701 varas east of the east line of the Story, as claimed by the defendants. The excess in westing from this corner of the Barnwell to the stone mound and line claimed by defendants to be the corner, and on an extension of the west line of the Story, is according to plaintiff's own testimony only 150 varas, and according to testimony offered by defendants only 30 or 40 varas. Such a trifling excess, be it 150 or 40 varas, would be unimportant in such a distance. There is no reason to suppose that all the excess of westing must fall on the Story, if any weight is to be given to the evidence of identity of the Barnwell corner; on the contrary the reason is against it. So we see the excess in the Story is slight when its west line is run as defendants claim it was. The vacancy claimed is then practically reduced to the excess of the Ostane and Richards, claimed by plaintiff to be 952 varas.

But the defendants say the northeast corner of the Richards survey, which is the southeast corner of the Ostane, is located by the evidence where they claim it to be; and if this be true, the east boundary of these surveys is fixed and no vacancy can exist where plaintiff says he finds it. In the original calls this corner is "at a pile of stone from which a mezquit bears north 19 degrees east 50 varas." This corner is 663 varas north from the southwest corner of survey No. 72, evidently the Henry. A pile of stone is found on the ground where defendants claim the corner to be, but no mezquit tree is there now; but there is ample evidence to justify the finding of the court that it once stood on the right course, and only 4 varas further off than stated in the field notes, a discrepancy shown to be immaterial. The evidence also was that this was, for years before this suit was brought, recognized by persons who ought to know as the Richards and Ostane corner, and that it was not questioned until this suit was brought. There was a conflict in the evidence as to this corner. Plaintiff and others could find no evidences of the tree ever having stood there, but other testimony shows unquestionably that it was once there. The court below found that this was the corner, and we see no reason why his finding should be disturbed. In such case we need not look to other surveys at a distance away for the lines of the surveys in dispute; they are all incontestably fixed by this corner. Other facts and deductions from those disclosed in the record have no value in comparison with this one fact. This gives us the disputed line, a common boundary of the Ostane and Richards on one side, and the Story, the Henry, and

the Southern Pacific Railway on the other, dispelling the idea of any vacancy between them.

The evidence strongly tends to show that there is an excess of land in surveys west of this line—how far west or on what surveys we are not called on to decide.  It is sufficient for this case that all the land in dispute was appropriated by these surveys long before plaintiff's locations were made.  It might be added that a mere excess does not always indicate a vacancy.  When the limits of a survey can be certainly known by its own description, or by other undisputed contiguous surveys, the excess, unless considerable, will not constitute a vacancy.  Freeman v. Mahoney, 57 Texas, 622; Reeves v. Roberts, 62 Texas, 550; Booth v. Upshur, 26 Texas, 70; Fagan v. Stoner, 67 Texas, 286; Lilly v. Blum, 70 Texas, 704.

The judgment of the court below is supported by the evidence, and our opinion is it ought to be affirmed.

*Affirmed.*

Adopted May 28, 1889.