ROBERTS et al. v. HART.

(Court of Civil Appeals of Texas. Austin. Feb. 25, 1914. Rehearing Denied March 25, 1914.)

1. EVIDENCE (§ 452*) — PAROL EVIDENCE — IDENTIFICATION OF SUBJECT-MATTER—LOCATION OF CALLS.

Even though there is no apparent ambiguity upon the face of a grant, parol evidence is admissible to locate the calls upon the land, and to show whether they include the land in controversy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2093–2101; Dec. Dig. § 452.*]

**2. EVIDENCE (§ 452*)—PAROL EVIDENCE—CONSTRUCTION OF LANGUAGE—LATENT AMBIGUITY.**

When all the calls in the field notes of a survey lead to the same result, there is no ambiguity, and the location must be determined by such calls as a matter of law, but, when the evidence shows that the calls lead to different results, there is a latent ambiguity, and some of the calls must be followed and others rejected.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2093–2101; Dec. Dig. § 452.*]

**3. BOUNDARIES (§ 37*) — ESTABLISHMENT — SUFFICIENCY OF EVIDENCE — LOCATION OF CORNER.**

Evidence *held* to show that the first call in the description of a tract of land which read. "Beginning at a stake set on the extremity of the sand bar" of a certain river, located the beginning point at the extremity of the bar furthest from the river.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

**4. WORDS AND PHRASES—"EXTREMITY."**

"Extremity" means the furthest point.

**5. BOUNDARIES (§ 48*)—ESTABLISHMENT—ACQUIESCENCE IN LOCATION.**

Even where there is no estoppel, long acquiescence as to the location of a corner or line is entitled to weight, especially where the owner lives upon the land.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 232–242; Dec. Dig. § 48.*]

**6. BOUNDARIES (§ 37*)—CONSTRUCTION—PARTICULAR CALL.**

Where a deed called for a point of beginning at the extremity of a sand bar of a river, "thence up the river with the meanders," and the courses and distances gave the meander of the sand bar, and not that of the river, the deed will be construed as referring to the meanders of the sand bar.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

**7. BOUNDARIES (§ 37*)—ESTABLISHMENT—REJECTION OF CALL.**

Evidence *held* to require the rejection, in the description contained in a deed, of a call for a corner made for a former grantee of the same grantor.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

**8. DEEDS (§ 38*)—CERTAINTY OF DESCRIPTION.**

A deed describing the land conveyed as all the land upon the west bank of. a river not theretofore sold by the grantor and not embraced within the lines of certain surveys, and, in fact, including all the land vacant on said west side of the river, commencing at a certain corner, and running thence down the river to a lower corner of a certain survey, and including the islands in the river, is sufficiently certain, under the maxim that "that is certain which can be made certain," to be admissible in evidence.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65–79; Dec. Dig. § 38.*]

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Action between Cleopatra Roberts and others and Fred Hart. From a judgment in favor of Fred Hart, Cleopatra Roberts and others appeal. Affirmed.

D. H. Doom and Fiset, McClendon & Shelley, all of Austin, for appellants. Hart & Patterson, of Austin, for appellee.

## Findings of Fact.

JENKINS, J. The following map will aid in understanding the facts in this case:

A. C. Horton is admitted to be the common source of title. He was formerly the owner of a portion of the Del Valle grant, including the land indicated by the above map. April 12, 1852, Horton executed to Hugh Tinnin a deed to 400 acres of the land described as follows: "That certain tract or

parcel of land lying and being situated in the county of Travis on the west bank of the Colorado river below the city of Austin, being part of the 11-league grant made by the government of Coahuila and Texas to Santiago del Valle and described according to the survey made thereof as follows, to wit: Beginning at a stake set on the extremity of the sand bar of the Colorado river at the foot of the high river bottom, and corner made for Mrs. Chalmers, from which a cluster of willow trees brs. S. 36 W. 4 vrs.; thence up the river with the meanders W. 400 vrs.; S. 60 W. 343 vrs. a stake and mound at the head of a sand bar, from which a sycamore 10 in. dia. marked X brs. S. 17 W. 13 vrs., and an elm 10 in. dia. marked K brs. S. 43 W. 20 vrs.; thence S. 30 W. 3,220 vrs. to a stone mound in a flat about 10 vrs. below the junction of two drains; thence S. 60 E. 689 vrs. stake in the bank of a drain and corner of Mrs. Chalmers tract, from which a double elm marked H. brs. N. 18 W. 12 vrs.; thence N. 30 —— 3,420 vrs., with said Mrs. Chalmers tract, to the place of beginning, containing in all 400 acres."

It is apparent from the face of this deed that the closing call, "N. 30 —— 3,420 vrs. with said Chalmers tract to the place of beginning," was intended to read "N. 30 E.," as no other course would lead to the beginning, whether such beginning be at the place claimed by appellant or at the place claimed by appellee. It is also apparent that the second call, "S. 60 W. 343 vrs.," was intended to be "N. 60 W.," as "N. 60 W.," the distance called for, will balance both the northings and southings and the eastings and westings, while the call "S. 60 W." gives an excess of 343 vrs. in the southings. That is to say, if the third corner mentioned in the field notes, and which is identified by the elm tree called for, be taken as the beginning corner, and the survey be run from thence, courses and distances as called for in the field notes, the last line, "S. 60 W.," as called for in the field notes, will reach a point 343 vrs. due south of the beginning point, and not on any line of the survey; whereas, if such line be run "N. 60 W.," the distance called for in the field notes, it will reach the assumed beginning corner at the elm tree.

The issue in this case is as to whether or not the deed above set out includes the land in controversy. If so, the judgment of the trial court should be reversed; if not, the judgment should be affirmed.

Appellee claims under a deed made by A. C. Horton to James B. Shaw and Jas. H. Matthews September 1, 1856, wherein is conveyed: "That certain tract or parcel of land lying on the Colorado river below the city of Austin, in said county of Travis, being all the land binding immediately upon the west bank of the Colorado river not heretofore sold by me and not embraced within the true lines of any surveys heretofore made for the tracts of land owned by Hugh Tinnin, Den-

nis Walsh, the heirs of Mrs. Chalmers and Thomas F. Chapman, and in fact including all the land that may be vacant on said west side of the river, commencing at the lower corner of a tract owned by Samuel Stone, and running thence down the river with its meanders to the lower corner of said Horton survey as designated in the field notes thereof on the Colorado river, and including all the islands in the river rightfully belonging to the said Horton survey and lying between the points above expressed."

If, however, the land described in this deed, and marked "sand bar" on the above map, was included in the prior deed from Horton to Tinnin, the grantees obtained no title, and appellant, as one of the heirs of Tinnin, is entitled to recover in this suit. Appellee by mesne conveyances became the owner of the Shaw and Matthews title to the lower half of the "sand bar" tract, and Mrs. Tinnin, the mother of Mrs. Roberts, in 1878 purchased the Shaw and Matthews title to the upper half of the "sand bar tract." The Shaw and Matthews title has never been called in question by Tinnin or his heirs until after this suit was filed, which was originally a suit for a right of way by necessity.

If a survey be begun at the original northwest corner of the Tinnin tract, marked on the map "elm tree," and run thence S. 30 W. 3,220 vrs. as called for in the Tinnin field notes, and thence S. 60 E. 708.9 vrs. an excess of 19.9 vrs., the original southeast corner of the Tinnin tract will be reached; thence N. 30 E. 3,420 vrs. as called for in the Tinnin field notes will reach the top of the slough bank; continuing 33 varas will reach the opposite side of the slough and the edge of the sand bar, the point marked on the map "iron pin at willow tree"; thence west 423 vrs. and N. 60 W. 343 vrs. will follow the course of the slough and sand bar, and close the survey at the elm tree corner. If the line from the southeast corner of the Tinnin tract be continued to the river, there will be an excess in this line of about 943 vrs., and, if from the point thus reached the meanders of the river be followed to the point on the river coincident with the extension of the west line of the Tinnin tract, this point will be 278.3 vrs. N. 30 E. of the elm tree corner, and there will be an excess in the aggregate length of the calls for the north line of the Tinnin tract of about 440 vrs.

From these facts we find, as a fact, that the northeast corner of the Tinnin tract is at the iron pin at the willow tree; that the Tinnin deed does not include the sand bar tract, but that the division line between the Tinnin tract and the sand bar tract is, as found by the trial court, beginning at said iron pin, and running thence west 423 vrs. and N. 60 W. 343 vrs. to the elm tree corner.

### Opinion.

[1] The appellant contends that the unambiguous call in the deed from Horton to Tin-

nin fixes its beginning corner on the bank of the Colorado river, and that it runs thence up the river with its meanders to the point where the west line of said tract reaches the river, and that the court erred in admitting any testimony to the contrary.

Though there be no apparent ambiguity upon the face of the grant, at what particular place the calls locate the grant can be ascertained only by parol evidence. For instance, a patent to a section of land may call for natural or artificial monuments at each of its corners. Whether or not those monuments can be found and identified and, if so, whether the lines located by such monuments include the land in controversy cannot be told by reading the grant, but only from the oral testimony of those who know the facts; hence testimony as to such facts is always admissible. The lines of a survey as originally run are its boundaries as a matter of law, but where such lines are is a matter of fact to be ascertained by oral testimony showing the application of the calls in the grant to the facts found on the ground. Bolton v. Lann, 16 Tex. 112; Bass v. Mitchell, 22 Tex. 294; Douthit v. Robinson, 55 Tex. 69; Bently v. Napier, 122 S. W. 182; Colcord v. Alexander, 67 Ill. 583; Reamer v. Nesmith, 34 Cal. 626; Strickland v. Draughan, 88 N. C. 317; Greeley v. Weaver (Me.) 13 Atl. 575.

[2] When all of the calls in the field notes of a survey lead to the same result, there is no ambiguity, and the location must be determined by such calls as a matter of law, and neither the court nor the jury are at liberty to disregard them; but, when the evidence shows that such calls lead to' different results, a latent ambiguity is made to appear, and some of the calls will be made to control and others will be rejected as having been inserted by mistake. Bassett v. Martin, 83 Tex. 339, 18 S. W. 587; Sloan v. King, 33 Tex. Civ. App. 541, 77 S. W. 48.

[3] Appellant insists that the deed to Tinnin calls for the Colorado river and its meanders, and that these are the controlling calls. There are no hard and fast rules as to what calls in a grant will control. Booth v. Upshur, 26 Tex. 70. The rule as to the comparative dignity of calls is a rule of logic rather than of law. But we need not here discuss these rules, as we do not think that the Tinnin deed calls to begin on the Colorado river. The call is: "Beginning at a stake set on the extremity of the sand bar of the Colorado river."

[4] Extremity means furthest point. In this instance we think it means at the furthest point from the river. We are led to this conclusion for the reasons: First. If the corner had been made on the river, there is no apparent necessity for having mentioned the sand bar; and, if it had been mentioned as a matter of description, there should also have been a call for the stake to be on the bank or edge of the river. Second. The call is for the stake to be "at the foot of the high river bottom." The undisputed evidence is that the slough bank at the time the deed was made was from 10 to 20 feet high on the south, but there was no bank on the north. The land to the south of the slough has been known from the time of the execution of the Tinnin deed to the present as "the high river bottom," and the land to the north of the slough as the "sand bar." Third. A cluster of willows is called for as a bearing; a growth of willows and an old willow stump are found at the point marked "iron pin" on the map, which is at the outward extremity of the sand bar. Fourth. From this point, by correcting the error of S. 60 W. so as to read N. 60 W., and extending the first call to 423 vrs., the N. E. corner of the tract at the elm tree will be reached; whereas, if the meanders of the river be run, there will be an excess of some 440 vrs. in the aggregate length of the meanders, and the point reached will be 278.3 vrs. N. 30 E. from said northeast corner. Fifth. To locate the beginning corner at the iron pin, the survey will contain approximately the number of acres called for; while to locate the beginning corner on the river will give an excess of about 100 acres. Sixth. From the southeast corner of the Tinnin survey to the iron pin there is an excess of only 33 vrs., while, if this line be extended to the river, there will be an excess of about 943 vrs. Seventh. Tinnin located his home near the elm tree corner soon after purchasing the Tinnin tract, and he and some of his family have lived there from that time to the present day. None of them ever claimed that his deed included the sand bar until after this suit was brought. On the contrary, Horton sold this sand bar tract to other parties in 1856, who have continuously claimed it since that time, and Mrs. Tinnin bought the upper half of it under this title in 1878. In the partition of the Tinnin estate, this place where the iron pin is was recognized as the beginning corner of the Tinnin tract, and Mrs. Roberts herself pointed out this place to a surveyor who was surveying for her as the beginning corner.

[5] There is no estoppel in this case, but long acquiescence as to the location of a corner or line is entitled to weight upon the theory that every one is presumed to know the boundaries of his land, especially when he lives upon it.

[6] It will be observed that the calls from the beginning corner in the Tinnin deed do not specifically call for the meanders of the river. The call is: "Thence up the river with the meanders." The courses and distances given meander the sand bar, and we think that its meanders, and not those of the river, are intended.

[7] It is true that the beginning corner calls for "a corner made for Mrs. Chalmers," and no corner is called for at this place in the Chalmers deed. The slough at this point

turns eastward, and the surveyor who run out the Tinnin tract may have supposed that one of her corners was at this place. However this may be, this call, in the light of the evidence, must be rejected.

[8] We overrule appellants' assignment to the effect that the court erred in admitting in evidence the deed from Horton to Shaw and Matthews, for the reason that the same was void for uncertainty as to the land conveyed. It was sufficiently certain under the maxim that "that is certain which can, be made certain." This deed furnishes data by which the land therein conveyed can be definitely ascertained.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.