## FLOYD et al. v. DAY.
### No. 971.

Court of Civil Appeals of Texas. Eastland.
April 15, 1932.

Rehearing Denied June 10, 1932.

F. J. Winter, of Houston, and D. J. Brookreson, of Benjamin, for appellants.

Ratliff & Ratliff, of Haskell, for appellee.

LESLIE, J.

The plaintiff Roy Day filed this suit in trespass to try title against William Floyd, executor of the estate of Sarah Floyd Turner, and other defendants, to recover the title and possession of survey No. 3, T. & N. O. Railway Company survey, situated in Stonewall county, Tex., and located by virtue of certificate No. 859, issued to that company by the state. The title was also claimed under the statute of limitation. The defendants answered by general denial, plea of not guilty, etc. The trial was before the court without a jury, and, on the jury's answer to a single issue, a judgment was rendered in favor of the plaintiff for said lands, and the defendants appeal. The parties will be referred to as in the trial court.

A detailed statement of the nature of the suit will appear in the disposition and discussion of the various points on which the appeal is predicated. At this time, suffice it to say that the real point at issue between the parties was the true location on the ground of the beginning point of the Cordova league and labor of land, located in Stonewall county, Tex., in 1871. With that issue settled, the east boundary line of said Cordova league could be established and based upon said east line the sections of land to its east, including that in litigation, could be definitely located and found on the ground.

The only issue submitted to the jury was as follows: "Which do you find to be the correct beginning point for the Cordova Survey, the shaley rock identified by the witness Lee, or the rock marked 'X,' identified by the witness Rike?"

The jury answered the question: "The shaley rock identified by J. F. Lee."

Neither side urged any objection to the substance of the issue or the manner of its submission, except that the defendants requested a peremptory instruction on the theory that there was no evidence to warrant the submission of any issue. This brings us to a consideration of the assignments of error presented.

The defendants have briefed propositions 1, 2, and 3 together on the theory that they involve the same rules of law. They will therefore be considered together. The first is to the effect that the court erred in permitting the plaintiff to elicit on the cross-examination of the witness, H. M. Rike, a surveyor, testimony as to the result of running without variation a tie line between Martindale sections 2 and 3, because such testimony varied the field notes of said surveys, which called for no variation; the second is, in substance, that the court erred in permitting the witness J. F. Lee, a surveyor, to testify in behalf of the plaintiff that in his efforts to locate the beginning point of the Cordova sur-

vey, which called for the northeast corner of Martindale No. 3, he took into consideration proper variations, and in doing so reached a shale rock which he took to be the beginning point of the Cordova survey. The objection was that such testimony was a parol variance of the description contained in the field notes of the Cordova land, which notes called for a rock marked "X" as the beginning point, whereas the shale rock evidenced no such mark; and the third proposition is as follows: "The court erred in permitting the witness, J. F. Lee, to testify, over defendants' objection, to the fact that he ran a tie line on a variation and thereby located a shale rock some 1344 varas west from the large rock marked 'X', for the reason that such evidence tended to vary the terms of the original field notes."

■■■ These propositions are overruled. The testimony elicited from Rike and objected to by the defendants was legitimate cross-examination of that witness. The three Martindale surveys were senior to the Cordova, which had its beginning point at the northeast corner of Martindale No. 3. The location of that on the ground was in dispute. The surveyor Rike testified that the Martindale sections were originally located by a surveyor who did not take into consideration the variation of 10 deg. and 30 min., or any other variation of the magnetic pole from the true North Pole in that locality at the time of the original survey of those sections; that is, it was his theory that they were surveyed and their lines located originally according to the magnetic meridian and not according to the true meridian. He testified that, in reaching the northeast corner of the Martindale No. 3, he therefore disregarded variation that he might follow the footsteps of the original surveyor. So construing the field notes, he testified that he (approaching from the northeast corner of Martindale No. 2) reached the rock with an "X" on it and took it to be the northeast corner of Martindale No. 3, and the beginning point of the Cordova. He admitted that disregarding the variation and so running a line was an exception to the general rule, but deemed it necessary to do so in deference to the theory adopted by the original surveyor. The surveyor Lee testified that such variation was not and could not be disregarded in surveying lands, and that, taking notice of such variation, together with the course given by the field notes to the Martindale section lines, he reached a shale rock which he took to be the northeast corner of Martindale No. 3, although the rock was not marked by "X" or any other character of identification. These explanations by the respective surveyors as to how they reached the rocks claimed by them respectively as the beginning point of the Cordova league were admissible and proper under the facts of this case, either on direct or cross-examination.

The correctness of their surveying and the accuracy of their conclusions could be tested or arrived at in no other or better way.

■■ Further, the testimony did not vary the description of the land as set out in the field notes. It did not violate the rule to the effect that extrinsic or parol evidence may not be resorted to in order to vary the description of lands and show that the survey occupies some other position. The testimony was elicited in an effort to apply the Cordova field notes to the true point of beginning on the ground. The plaintiff and his witnesses contended that the field notes and the surveys made by them placed that point at a shale rock, which in times past and originally may have had an "X" marked on it. To the contrary, the defendants contended that, by disregarding the variations and running the surveys and tie lines accordingly, they reached the rock marked "X" which met the description of the field notes. Such testimony as that objected to is sanctioned by the authorities when such an issue is involved.

As said in 4 R. C. L. p. 125, § 165, under the subject of "Parol Evidence as to Boundaries": "One of the well established rules of law is that parol evidence is always admissible to apply a writing to its subject, and therefore to identify monuments called for in descriptions of tracts of land contained in patents and deeds."

In 22 C. J. p. 1271, § 1689, under the subject of "Monuments and Calls," it is said: "Parol evidence is admissible for the purpose of locating and identifying the monuments referred to, and the calls of the description in a deed or other writing relating to real property,—"

In support of this rule a great number of authorities from various jurisdictions are cited, among them many Texas cases, from one of which, Roberts v. Hart (Tex. Civ. App.) 165 S. W. 473, 476, we quote the following: "Though there be no apparent ambiguity upon the face of the grant, at what particular place the calls locate the grant can be ascertained only by parol evidence. For instance, a patent to a section of land may call for natural or artificial monuments at each of its corners. Whether or not those monuments can be found and identified and, if so, whether the lines located by such monuments include the land in controversy cannot be told by reading the grant, but only from the oral testimony of those who know the facts; hence testimony as to such facts is always admissible. The lines of a survey as originally run are its boundaries as a matter of law, but where such lines are is a matter of fact to be ascertained by oral testimony showing the application of the calls in the grant to the facts found on the ground."

■ Propositions 4, 5, and 9 will next be considered together; 4 and 5 complain that

the court erred in denying the defendants' request for a peremptory instruction, in that there was no evidence to justify the submission of any issue to the jury, and No. 9 is to the effect that the testimony was insufficient to support the verdict and judgment. In disposing of these propositions it will not be proper or necessary to make a detailed statement of the testimony, but, in substance, at least, some of the most material portions thereof will be referred to, even at the risk of some slight repetition of certain phases of the same.

The witnesses Lee and Rike referred to in the issue submitted were both surveyors of considerable experience in that line of work, and apparently of long residence in the vicinity of the lands in controversy. From the standpoint of expert testimony Lee was the chief witness on behalf of the claims of the plaintiff, and Rike was the chief witness on behalf of the claims of the defendants. Aside from the expert testimony given by them as engineers, they gave much testimony relative to landmarks, old fences, adjoining surveys, and other circumstances bearing upon the correct location on the ground of the Cordova tract of land, as well as the land in controversy. A singular fact, and one of much significance, is that these surveyors agree that the rock claimed by each of them respectively to be the beginning point of the Cordova league and labor of land is located on the south boundary line of the Cordova land, and that such rocks are 1,344 varas apart, or substantially so. Their testimony is that the north boundary line of Martindale section No. 3 is 1,344 varas in length, and that the true northeast corner of the Martindale No. 3 is, according to the field notes of the Cordova, the beginning point of that league of land. The Cordova tract of land is in the shape of a square whose sides are 5,100 varas long, running due east and west and north and south, according to the true north, as contradistinguished from the magnetic north. The field notes of the Cordova land designate its beginning point as "the northeast corner of a 320 acre survey made for Daniel Martindale No. 3, a flat rock for corner marked 'X.'" No "X" was found upon the shale rock, and the testimony is that, if any such mark was ever placed thereon, it had shaled off, the corner of the Cordova lands having been designated as far back as 1871, and subsequent to the Martindale No. 3, which was located in 1869.

No issue was submitted to the jury and none was requested as to whether or not the original Martindale sections, and consequently the beginning point of the Cordova land, were located without making an allowance for variation above mentioned (4 R. C. L. p. 1112, § 50), but, aside from this phase of the case, the testimony of the respective litigants contested closely the issue of which of the two designated rocks constituted the beginning point of the Cordova. Hence the issue suggested must be regarded as comprehended in the issue submitted, and acquiesced in by the parties. Therefore, with the beginning point of the Cordova thus established, a line 2,500 varas due east from the shale rock became the southeast corner of the Cordova, and a perpendicular line north from that point became the east line of the Cordova lands. Regarding such as the true east line of the Cordova, it became a simple matter to establish the corners and boundaries of the various sections of land that had been located subsequently to the location of the Cordova and located relative thereto, and in fact tied to the boundary lines of the Cordova. Among these subsequent surveys, the land in controversy took its logical location with its west boundary line, according to the verdict of the jury and the judgment of the court, 357 varas east of the east line of the Cordova, as contended by the plaintiff. In such case there would be no overlapping of the Cordova and the lands in dispute.

From the foregoing, it is obvious that, had they established the flat rock marked "X" as the beginning point of the Cordova lands, the field notes of the Cordova would have projected the southeast corner of those lands due east to a point about 1,344 varas further east than the point taken as the southeast corner of the Cordova, according to the contention of the plaintiff and the finding of the jury. Further, taking the rock marked "X" as the beginning point of the Cordova, and projecting the south line of those lands 2,500 varas due east, the south line of the Cordova would have extended across the Brazos river without the field notes of the Cordova in any way mentioning such fact or circumstance, and a perpendicular line from such point extending north would have cut deep into several sections of land which had been located with reference to the Cordova tract and tied to the east boundary line thereof. The result would have been to practically obliterate the section of land in controversy, and such location of the east line of the Cordova would have had the effect of drawing the west line of that tract on equal distance toward the east, and theoretically at least, if not in fact, creating a vacancy upon the west side of the Cordova. The disturbing effect which this would have had upon the lands to the west, located with reference to the Cordova, is obvious.

The above circumstances disclosed by the record and others which it is unnecessary to mention here convince this court that the verdict of the jury is well supported by the testimony, and the assignments now under consideration are overruled.

In this connection we find it unnecessary to discuss the expert testimony of the survey-

ors in which they undertake to explain how they reached the respective rocks claimed by them to be the beginning point of the Cordova survey. Evidently they endeavored to reach the same by running a tie line 4,460 varas long on a course north 16 west (field notes) from the northeast corner of Martindale section No. 2, which in turn is built upon Martindale section No. 1, which itself is definitely located with reference to a well-established landmark at the forks of the Double Mountain fork and the Salt fork of the Brazos river. As we interpret the record, both surveyors concede that the tie line is properly run from the northeast corner of Martindale No. 2, which we think may be regarded as a conclusively established land mark. Both surveyors undertake to run the tie line from the northeast corner of Martindale No. 2 to the southeast corner of Martindale No. 3, at which point they turn north 1,344 varas to a point which they regard as the beginning point of the Cordova lands. As noted, they do not reach the same point, for the reason that the surveyor Lee, in running the tie line, makes an allowance for variation of 11 deg. 10 min., whereas the surveyor Rike makes no allowance, since it is his view that the original surveyor made none when he laid out the lands and prepared the field notes. Naturally they would arrive at a different point for the northeast corner of Martindale No. 3, and hence a different point for the beginning of the Cordova land.

A careful examination of their testimony in the light of the plats contained in the statement of facts discloses that there are inaccuracies in the conclusions of each, but not of such a nature as would authorize this court to overturn the verdict of the jury, which we deem to be supported by other independent and sufficient testimony aside from that of a technical nature. As before noted, it is evident that the point selected by each of them as the beginning point lies on the south boundary line of what has long been recognized and is recognized by these surveyors as the south boundary line of the Cordova league and labor of land, and it is undisputed that such points are 1,344 varas apart.

■ Propositions 6, 7, and 8 are overruled. The first two complain of the admission of certain testimony, but the accepted qualifications of the defendants' bills of exceptions by the trial court discloses that the testimony was offered for a limited purpose, and that the defendants in fact made no objection to its admission for such purpose.

Proposition 8 was to the effect that the court erred in permitting the plaintiff to offer testimony tending to impeach a witness without first laying a predicate for so doing. Here the accepted qualification for the bill shows that the predicate was in fact laid. These propositions therefore present no error.

For the reasons assigned, the judgment of the trial court is affirmed.