**PHILLIPS v. STANOLIND OIL & GAS
CO. et al.
No. 4185.**

Court of Civil Appeals of Texas. El Paso.
Oct. 8, 1942.

Rehearing Denied Dec. 3, 1942.

David B. Trammell, of Fort Worth, and Clayton L. Orn, of Houston, for amicus curiae.

Hughes, Hardeman & Wilson, of San Angelo (Morriss & Morriss, of San Antonio, on the brief), for appellant.

Ben G. Smith, Burney Braly, John A. Braly, G. R. Pate, Myron A. Smith, William N. Sands, and Paul A. McDermott, all of Fort Worth, Vernon Coe, R. H. Whilden, Carroll L. Thomas, R. E. Seagler, J. P. Adoue, Harry Dow, and W. B. Wagner, all of Houston, H. E. Jackson, Robert Toombs Neill, and Collins, Jackson, & Snodgrass, all of San Angelo, Geo. W. Schmucker and S. M. Leftwich, both of Dallas, Houston Smith and N. W. Graham, both of Ozona, Swearingen & Miller, of San Antonio, and James Marberry, of Tulsa, Okl., for appellees.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of Crockett County. It was a suit to establish a vacancy. The basis thereof was subdivisions (i) and (j), section 6, of Article 5421c, Vernon's Ann. Civ.St. Plaintiff claimed the right to purchase the alleged vacancy by virtue of an application filed by Bob Reid on the 25th day of September, 1931, with the Surveyor of Crockett County, connecting himself with such application. Defendants are the State of Texas and various parties whose interests would be directly adversely affected were such vacancy established as alleged by the plaintiff.

The parties will here bear the designation they bore in the trial in the District Court.

The trial was before the court with a jury. On the verdict judgment was rendered against the plaintiff, and from such judgment plaintiff has perfected this appeal. As to the State, the judgment was without prejudice save as to the issue of boundary.

The area claimed by plaintiff to be subject to his application is bounded on the south by the R. S. Alexander Survey, on the west by Surveys 47, 36, 35, 40, 28 and 27, Block WX, G. C. & S. F. Ry. Co., Surveys 10, 9, 8 and part of 7, of Block 9, D. & S. E. R. R. Co.; on the north by a line projected west from the southwest corner of Survey 16, Block 51, University lands, to the west line of Block 9, D. & S. E. R. R. Co.; and bounded on the east by Surveys 61, 62, 63, 64, 65, 67, 68, 69, 70 and 52, Block UV, G. C. & S. F. Ry. Co. The area is a parallelogram in shape, being 19,000 varas long north and south and 1,112.6 varas wide east and west.

The court submitted the case to the jury on two special issues, as follows:

"Do you find from the evidence that the surveyor S. A. Thompson, who located Blocks UV and WX, Gulf, Colorado & Santa Fe R. R. Company survey in Crockett County, Texas, in about August and September, 1880, located on the ground the west line of said Block UV and the east line of said Block WX as one and the same line?"

Number two was:

"If you have answered Special Issue No. 1 'Yes,' you need not answer the following Special Issue No. 2, but if you have answered Special Issue No. 1 'No,' then you will answer the following Special Issue No. 2.

"From a preponderance of the evidence how far, stated in varas, do you find that said Surveyor located the west line of

said Block UV from the east line of said Block WX?"

The jury answered Special Issue No. 1 "Yes," hence in accordance with the charge did not answer Special Issue No. 2.

There is no controversy as to the east line of Block WX. Same is marked by monuments identified on the ground placed there by the original surveyor, S. A. Thompson. The east boundary line of Block No. 9, D. & S. E. R. R. Co., is a projection north of the east line of Block WX. The real issue was as to the location of the west line of Block UV.

Stated alternatively, the issue was as to whether the east line of WX and the west line of UV were a common line of division between the two blocks, or the west line of UV was to the east of the east line of WX.

Summarized, the points relied on by plaintiff (appellant) are about as follows: The evidence established the vacancy as alleged beyond issue; complaint is made of the refusal of special issues requested by plaintiff and as to the exclusion of evidence. No error is assigned as to the charge submitted by the court.

In view of the assignment that the judgment is not in accordance with the undisputed evidence, a discussion of the evidence is necessary.

Block OP lines immediately east of Block UV, Block WX west of UV. All three blocks were surveyed by S. A. Thompson in the latter part of August, 1880, and the early part of September, 1880. Block OP was surveyed August 23–25; Surveys 1 to 20, Block UV on August 30, 1880; Surveys 21 to 40, Block UV, on August 31, 1880; Surveys 41 to 60, Block UV, on September 1, 1880; Surveys 60 to 70, Block UV, on September 2, 1880; Surveys 1 to 16, Block WX, on September 3, 1880; Surveys 17 to 36, Block WX, on September 4, 1880. The field notes of Block UV and Block WX were filed in the General Land Office on April 26, 1881. The same chain carriers, W. Day and H. Livingston, assisted the surveyor, S. A. Thompson, in surveying Blocks UV and WX. The field notes of the east tier of surveys in Block WX, being numbers 27, 28, 30, 35 and 36, all call for adjoinders with the west tier of surveys in Block UV. Surveys in Block UV were constructed in tiers extending north and south, the surveys in each tier being in numerical order, and each survey calling for the one next preceding. All the officials maps of Crockett County show Blocks UV and WX as adjoinding, the east line of WX in the area here in question being the west line of Block UV. On the margin of the original field notes of each survey was a sketch showing the location of the particular survey in relation to numerically prior adjacent surveys in the same block and previously dated surveys in the adjacent block; on the field notes returned of Surveys 27, 28, 30, 35 and 36, in Block WX, the adjoinder in relationship of such surveys with the surveys called for respectively in Block UV is shown. The calls in the field notes of Survey 64, Block UV, are as follows:

"Beginning at a pile of rock at the S. W. Corner of Survey No. 63 in this block, for the N. W. corner of this survey

"Thence East 1900 varas to a Stake & M'd in the W. line of Survey No. 59 in this block & at the S. E. Corner of Survey No. 63 this Block, for the N. E. Corner of this Survey

"Thence South at 950 varas pass a pile of rock at the S. W. Corner of Survey No. 59 & North West corner of Survey No. 58 in this block, 1900 varas to a Stake & M'd for the S. E. Corner of this Survey

"Thence West 1900 varas to a Stake & M'd, for the S. W. Corner of this Survey

"Thence North at 950 varas pass a rock Monument 2½ ft. high, from whence a Live Oak tree 12 in Dia Br's S. 30°-W. 713 Vs', Another Live Oak, 7 in Dia' Br's S. 45°-30' W. 588 Vs, 1900 varas to the place of beginning. Bearings marked X."

The field notes of Survey 27, in Block WX, dated two days later than those of Survey 64, UV, are as follows:

"Beginning at a rock Monument 3 feet high at the N. E. corner of Survey No. 26 in this block, for the N. W. Corner of this Survey

"Thence South 1900 Varas to Stake & M'd at the S. E. Cor' of Survey No. 26 & N. E. Corner of Survey No. 25 in this block, for the S. W. Corner of this Survey

"Thence East 1900 Varas to a Stake & M'd in the W. line of Survey No. 65 Blk. U. V. for the S. E. Corner of this Survey—

"Thence North at 950 Vs. pass Stake & M'd at the N. W. Corner of Survey No. 65 & S. W. Corner of Survey No. 64 Blk. U. V. 1900 Varas to a rock Monument 2½

feet high, for the N. E. Corner of this Survey, from whence a Live Oak tree 12 in. Dia' Br's S. 20°-30' W. 713 Vs. Another Live Oak tree 7 in Dia' Brs'. S. 45°-30' W. 588 Vs;

"Thence West 1900 varas to the place of beginning. Bearings marked X."

The monument called for as the northeast corner of 27 still exists and was identified by all the surveyors testifying.

It will be observed that the monument for the northeast corner of Survey 27 is markedly similar to the monument called for in Survey 64 as being in the west boundary line thereof. The southwest corner of Survey 36 of Block WX as marked by the original surveyor is well established. The call east from that corner is as follows: "Thence East at 1080 Varas Point from whence above described hill Br's S. 39°-30' W. 1900 Varas to a rock Monument 3 feet high in the W. line of Survey No. 70 Blk. U. V. for the S. E. Corner of this Survey."

A rock monument exists on a course south 89° 50' E. at a distance of approximately 1,900 varas from the monument at the southwest corner of Survey 36. The northwest corner of Survey 61, Block UV is the northwest corner of the block. According to its field notes it is identical with the southwest corner of Survey 16, in Block 51, University lands. University Block 51 was surveyed by Surveyor R. M. Thomson on November 24, 1879.

The second call in the field notes of Survey 61, Block UV, is as follows: "Thence W. at 950 varas pass earth mound at the S.W. Corner of said Survey No. 17, 2850 Varas to a large earth mound at the S.W. corner of Survey No. 16, Block 61, University Lands for the N.W. corner of this survey."

The beginning call in the field notes of Survey 1, Block WX is as follows: "Beginning at a rock monument 3 feet high which is three miles South & 5 miles West of an earth monument at the S.W. Corner of Survey No. 16, Block 51, University Land, for the N.E. Corner of this Survey, from said rock monument a pilot on round mountain in the distance bears S. 70°-45' E."

On the field notes of each of the one hundred and six surveys in the Blocks UV and WX appears the following certificate:

"I, S. A. Thompson, Deputy Surveyor of Bexar Land District, do hereby certify that the foregoing survey was made according to law, in the field, and that the limits, boundaries and corners, with their marks, natural and artificial, are truly described in the foregoing plat and field notes.

"S. A. Thompson, Deputy Surveyor "Bexar Land District."

Plaintiff's position is that Block UV is a prior and senior survey to Block WX, and that the west boundary line of UV cannot be established by the calls of a junior survey. Further, that there are no identifiable monuments of the survey on the interior lines of Block UV; that Block UV was established off of Block OP, working from east to the west; that the northeast corner of Survey 62, Block OP is established by an existing monument used by S. A. Thompson, the original surveyor, in establishing 62; that there being no monument for the original survey as to Block UV, the surest and only reliable and definite way to establish Block UV is from the known point, to-wit, the northeast corner of Survey 62, in Block OP.

Plaintiff's theory of a proper construction of UV by course and distance from the known monument in OP shows a vacancy of about the width claimed by him; that is, about 1,112 varas.

Blocks OP, UV and WX seem to have been one piece of work; that is, made by the same surveyor working continuously, using the same chain carriers, the field notes of each block returned to the Land Office subsequent to the completion of the survey of the entire three blocks. It is true that Block UV was built off of Block OP, and there is a relationship between the construction of the two blocks; likewise, we think, there is an intrinsic relationship between the three blocks.

The monuments showing the acts of the surveyor in any part of the area of the three blocks involved we think have a bearing in showing and locating the area covered by the three blocks. Beyond any question it was not Thompson's interpretation of his own work that there was to be a vacancy between the Blocks UV and WX. This is shown by his illustrative sketches on his field notes. It was not the construction of the General Land Office there was any vacancy. The maps seem to have consistently shown that there was no vacancy between the two blocks. Thompson, unquestionably, located on the ground the east boundary of WX. His certificates to the field notes of the various surveys

comprising Block UV indicate an actual survey of that block was made. According to the date of the field notes four days were consumed in making the survey. Some fifty years after the survey of UV was made, plaintiff's surveyor was unable to find the monuments called for in the survey.

It may be true that as to each line of each of the surveys constituting these blocks some were not actually run out by the surveyor. All parties concede some of the lines of WX and OP were run and marked. The field notes returned by the original surveyor certify to an actual survey as to the surveys constituting the three blocks. Considering the area involved in the three blocks, we think it fair to assume that the surveyor did not run and mark the lines of each survey of the surveys constituting the three blocks. However we think the evidence at least raises the issue that he did actual surveying in Block UV and monuments exist attesting same.

 In order to sustain plaintiff's first point of error, the burden is upon him to show that, applying the law to the undisputed material facts, the west line of Block UV lies east of the east line of Block WX. The footsteps of the original surveyor, Thompson, govern in the location of this line insofar as the evidence establishes same. 7 Tex.Jur. 142; Booker v. Hart, 77 Tex. 146, 12 S.W. 16; Roberts v. Hart, Tex.Civ.App., 165 S.W. 473.

Without consideration of the probative weight thereof we have the res gestae declaration of Thompson, a deceased surveyor, that the two lines are coincidental. The east tier of sections in WX call for the east line of the west tier of sections in UV. This is some evidence of the west line of UV. It may be that it might be robbed of its probative weight as to location of such west line by more certain evidence.

It is asserted, if Thompson's survey monumented any of the interior surveys of UV, such monuments cannot be found or located on the ground. Absent evidence of their existence and location, the only way to construct UV is by course and distance from the known and conceded corner of Survey 62, in Block OP.

Concededly, there are calls in some of the surveys in UV for artificial monuments, rock mounds of a given height. Particularly is this true as to Surveys 10, 12, 29, 30, 31, 32, 50, 53 and 70, of Block UV.

The two or more surveyors testifying on behalf of the defendant testified to having located these monuments as being in existence and in their opinion being those placed there by Thompson. These witnesses ran east from the southeast corner of Survey No. 36, of Block WX on approximately the same course as the south line of Survey 36, and located what, in their opinion, were these monuments. There were some six or more discovered. In all cases the distance between them exceeded 1,900 varas. The excess above 1,900 ran from ten or twelve varas to as much as ninety-two varas.

A construction of the block from these monuments, the location of which depends in a large measure upon the conceded location of the corner of Survey 27 in Block WX, is inconsistent with a course and distance construction from the conceded corner in Survey 62, Block OP. In our opinion, conceded, as it must be, that the northeast corner of 62, Block OP, was marked on the ground, as conceded by all the expert witnesses, and the marks still exist, this does not establish that the string of monuments found not far from the southerly line of UV were not placed there by Thompson. It may be their authenticity was an issuable fact, but if on trial the finding be in favor of their authenticity, they are entitled to probative weight in solving the issue of vacancy or non-vacancy.

See Booker v. Hart, 77 Tex. 146; 12 S.W. 16.

Thompson, in locating the beginning point of Survey No. 1, in Block WX, locates same with reference to the southeast corner of Survey 16, in Block 51, University. The field notes of Survey 61, Block UV, call for this southeast corner of 16, Block 51, as the northwest corner of 61. On the sketch of the field notes of Survey 61, Block UV, the northwest corner of that survey is shown to be identical with the southwest corner of Survey 16, Block 51.

As we have in substance stated, the survey of Blocks UV and WX was one continuous related piece of work. The subdivision into blocks was a mere incident to describing and further subdividing a hitherto undefined and undescribed area of the public lands. All evidence of the actual work done by the surveyor in any of the blocks bears relation to the other. Bell v. Preston, 19 Tex.Civ.App. 375, 47 S.W. 375; Brooks v. Slaughter, Tex.Civ.App.,

218 S.W. 632; McCormack v. Crawford, Tex.Civ.App., 181 S.W. 485; Beck v. Gulf Production Co., Tex.Civ.App., 113 S.W.2d 258, writ refused; Duval County Ranch Co. v. Rogers, Tex.Civ.App., 150 S.W.2d 880, writ refused.

In our opinion the evidence we have quoted at least makes it an issue of fact as to whether or not the vacancy in question has any existence.

See Booker v. Hart, supra.

Plaintiff complains of the refusal of certain special issues. These issues seem to have been requested as a unit and not severally.

The first relates to the service of citation through a licensed surveyor on the adjoining interested land owners. Defendants, or some of them at least, did question the right of plaintiff to maintain this suit. The theory was that under the law as it existed at the time plaintiff's application was filed, same having been rejected, the State being absent as a party, he had no right to maintain the suit. The procedure under the law existing on the date of the application was not questioned. Plaintiff based his right to maintain this suit on the law of 1939.

See General Laws 1939, p. 465, Vernon's Ann.Civ.St. art. 5421C.

That plaintiff had this right we held in the case of Gulf Oil Corporation v. State of Texas, Tex.Civ.App., 170 S.W.2d 798, recently handed down by this court, and not yet published.

Under the record we do not think that the issue tendered by Special Issue No. 1 was raised by the evidence.

No. 2 singles out and comments on the testimony of surveyor Simpson, and calls for a finding on an evidentiary rather than an ultimate fact.

Special Issue No. 3 does not call for a finding on an ultimate fact. The ultimate question is not where Thompson intended to locate Block UV, but where he did locate same.

The same is true as to Special Issue No. 4.

No. 5, submitted only in case No. 1 was answered in the affirmative, is immaterial. If Thompson did locate the west line of UV on the ground, that was the west line of UV.

No. 6 singles out and calls attention to plaintiff's testimony.

No. 7 calls for an evidentiary matter and not an ultimate fact.

No. 8 calls for an evidentiary matter, and further, we do not believe that the evidence was sufficient to raise the issue.

No. 9 does not call for a finding on an ultimate fact.

Plaintiff offered in evidence a letter dated March 27, 1901, signed by Surveyor W. D. Twitchell, addressed to Chas. Rogan, Land Commissioner, among other things, stating: "The earth mound at the S.E. corner of Survey 29, Block 46, University land cannot be identified, and the irregular position of other corners in the block furnish conflicting testimony as to the true position of this corner." The witness stated that as to the facts contained in the letter he, at the present time, had only a general recollection; that he would have some recollection of some of the corners that he found but not all of them; that the report was true at the time he made it.

It is stated in the argument that the report was based upon work Mr. Twitchell did on the ground forty years ago. We presume this report or letter was excluded upon the objection of defendants. What these objections were does not appear in the statement. Nowhere in the statement or argument is the relevancy of the location of the southeast corner of Survey 29, Block 46, pointed out. Upon what the witness based the statement that the earth mound could not be identified does not appear; likewise, the statement that the position of other corners of the block were irregular. Had the witness offered to testify that the location of the southeast corner of Survey 29, Block 46, could not be identified on March 27, 1901, it would have amounted to a sheer conclusion. This, of course, based upon the idea that no further predicate was laid than here. It does not appear what search the witness made to locate the monument; it does not appear wherein the position of the other corners in the block were irregular, creating the conflict of testimony asserted in the letter. The assignment is without merit.

Error is assigned upon the rejection of the testimony of J. A. Simpson that in 1932 Horace Thompson, now deceased, had told the witness that deceased had surveyed on the ground Block 51, University of Texas land, in Crockett County, and that he did not build any monuments of the size testified to by appellees' witness. Defendants' witness, Surveyor Friend, testified

that he found at the N.W. corner of Block 51, which is also the N.W. corner of Survey 3 thereof, a large stone monument about four feet high and some five or six feet in diameter at the base. It appeared to be undisturbed and very old. As to the conversation with Horace Thompson, Surveyor Simpson stated: "I described that size of stone mound to him as I found it on the ground; that is, stone mound to be found N.W. of 51, University lands, and I described that large rock monument to him as I found it, and for my own information I asked him if they ever made any corners like that on the ground, and he said, 'Absolutely not, they never took time to make corners of that size.' "

That Thompson was in a position to know the facts in regard to the erection of the monument is only attested by his unsworn statement as narrated by the witness Simpson. The field notes of the surveys constituting Block 51 returned to the Land Office are certified to by R. M. Thomson, a person other than the deceased declarant. The description of the rock mound given by the witness to the declarant does not appear in the statement.

We think, before this declaration was admissible, it must be shown by evidence other than the mere unsworn statement of the declarant that the declarant was in a position to know the facts. Further, it was made after this controversy had arisen. Stroud v. Springfield, 28 Tex. 649. Second, it was not res gestae to an act such as pointing out or marking boundaries, or discharging some duty relative thereto. Hunnicutt v. Peyton, 102 U.S. 333, 26 L.Ed. 113.

In our opinion the court did not err in rejecting this testimony.

Appellant's fifth point of error is as follows: "The court erred in refusing to admit in evidence State's Exhibit 3A, being a plat showing the construction of blocks UV and OP as contended for by appellant and indicating that the attitude and position of the State was in accord with appellant's theories and contentions and hence of material benefit to him."

That the State's contentions were in accord with those of appellant had no legitimate evidentiary value. If of benefit to appellant, it was not a legitimate benefit. The statement fails to show that appellant offered the exhibit in evidence; in fact, the statement shows same was offered by the State. Appellant's statement fails to show that he excepted to the ruling of the court in rejecting the testimony. The assignment is overruled.

We think, considering the evidence as a whole, that at least a question of fact was presented. This question was found by the jury against appellant. As to the State, it fixed the boundary line as contended by appellees, but provided that it should be without prejudice to the State to bring suit for all or any part of any character of interest in the land described and sued for by the plaintiff, except that the State should not claim or sue for said land as vacant or unsurveyed land.

The judgment is ordered affirmed.

WALTHALL, J., not participating.

SUTTON, Justice (concurring).

I agree with the disposition of this case with some hesitation and doubt.

I have serious doubts as to the existence of a question of fact for the jury. The trial court asked the jury if the original surveyor located on the ground the west line of Block UV and the east line of WX as one and the same line. If it is meant by this inquiry, did the surveyor locate the west line of Block UV by an actual survey made on the ground, then it is very doubtful if the evidence would support the finding. The field notes as returned show this block was surveyed in four days. Twenty surveys were located on each of the first three days and ten on the fourth. This was physically impossible in 1880, and is today. If by the inquiry is meant, did the surveyor lay out on the ground the north and south line now the east block line of WX, it is probably undisputed. There is no doubt but that the surveyor ran and marked this line on the ground, and that he set it up as the common boundary between the two blocks.

The record is that Block WX was surveyed in two days. The first day 16 sections were returned and 20 the second day. This was likewise impossible. The surveyor ran five miles west from the immovable north and south line and established the northeast corner of Section 1, Block WX. It then became an easy matter to plat in that block. It was then a mere matter of keeping the lines parallel. Had the same method been adopted for platting in Block UV and constructed it from the immovable line east, then no difficulty as to the common boundary could have arisen.

Block UV, however, was put in from east to west, course and distance. There is no dispute but that the distance between the east block line of UV, which is the west line of Block OP, is greater than seven miles. If Block UV, therefore, be constructed course and distance from the east, the east line of Block WX is not reached, hence an excess.

The excess in Block UV is by any theory from four to six full surveys of 640 acres each. In such a situation it is thought the excess may be so great as to be shocking.

The work here is unquestionably a mixture of field and office surveying. The failure of Block UV to reach the immovable east block line of WX constructed course and distance from the east results from a mistake and miscalculation of the distance between the west line of OP and the east line of WX. A construction of Block UV from the immovable east line of WX works confusion and conflicts to the south, and suggests the adoption of the rule found in State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228, and many other cases— a rejection of the call for adjoinder and a construction by course and distance.

There exists also a grave doubt as to the claimed error of the court in failing to submit the plaintiff's theory of construction, if there be a question of fact for the jury.